Rose *v.* Wortham.

ROSE *v.* WORTHAM.

(*Knoxville.* November 2, 1895.)

1. LIFE INSURANCE. *Goes to widow and children, when.*

That a policy on the husband's life was taken out before his marriage does not prevent it from going to his wife and children, where, under the statutes, it would have inured to their benefit if it had been taken out after marriage. (*Post, pp. 507, 508, 511, 512.*)

Code construed: §§ 3135, 3335 (M. & V.); 2294, 2478 (T. & S.).

2. SAME. *Payable to legal representatives of assured goes to wife and children.*

A life policy made payable to "the legal representatives of the assured," goes to his widow and children or next of kin under the statutes, to the exclusion of his creditors, although the administrator may collect it. (*Post, pp. 510–512.*)

Code construed: §§ 3135, 3335 (M. & V.): §§ 2294, 2478 (T. & S.).

Cases cited and approved: Harvey *v.* Harrison, 89 Tenn., 470; State *v.* Anderson, 16 Lea, 338.

3. SAME. *Assured's surety not entitled to.*

The assured's surety, who became such in consideration that his principal had a life policy, cannot, for his indemnity, displace the rights of the widow and children or next of kin of the assured thereto under the statutes. (*Post, pp. 512, 513.*)

4. STATUTES. *Rules of construction.*

The legislative intent is a controlling consideration in the construction of statutes. It will prevail over the strict letter or literal sense of the language used. General terms will be limited, and narrower terms expanded, to harmonize with this intention. (*Post, pp. 509, 510.*)

Cases cited and approved; Richardson *v.* Duncan, 2 Heis., 220; Webb *v.* Brandon, 4 Heis., 288; 7 Wall., 219; 10 Ga., 65, 71.

5. SAME. *Liberally construed.*

Statutes making provisions for the widow and children of decedents are liberally construed to carry out the general purpose. (*Post, p. 511.*)

Cases cited and approved: Collier *v.* Latimer, 8 Bax., 420; Jackson *v.* Shelton, 89 Tenn., 82; Harvey *v.* Harrison, 89 Tenn., 470.

---

FROM CAMPBELL.

---

Appeal from Chancery Court of Campbell County. H. B. LINDSAY, Ch.

REID & POWERS for Rose.

WILLIAMS, HENDERSON & DAVIS for Perry & Co.

HENDERSON & JOUROLMON for Sallie Wortham.

J. J. MARS for Guarantee Co.

R. L. ROBINSON for Jellico Coal Co.

WILKES, J. The question involved in this case is to whom the proceeds of a policy on the life of Sidney Wortham, for $5,000, shall be paid; whether to his widow and child or to his creditors. The Chancellor held that the widow and child were entitled to the proceeds, after deducting certain expenses of collection, and the administrator and creditors appealed to this Court, and assigned as error this holding of the Chancellor. The cause has been heard by the Court of Chancery Appeals, and they

Rose *v.* Wortham.

have affirmed the decree of the Chancellor, and the administrator and creditors have appealed from that decision to this Court.

The facts, as found by the Court of Chancery Appeals, are that Sidney Wortham, on January 1, 1889, being an unmarried man, became engaged to and contracted to marry the defendant, Sallie, now his widow. The marriage was not consummated, however, till October 29, 1890. In the meantime, and on January 8, 1889, he took out a policy of insurance upon his life in the Mutual Benefit Life Insurance Company of Newark, New Jersey, for $5,000, directing it, in answer to a question propounded, to be made payable to "himself or his estate." On January 18, 1889, the policy was issued payable to the "legal representatives of the assured." The premium was to be $75.55, payable semiannually. Sidney Wortham, the insured, died November 25, 1892, leaving his widow and one child, and his estate is totally insolvent. Both before and after his marriage he paid the premiums on his policy as they fell due. He frequently stated to his wife that he intended she and their child should have the proceeds of the policy, and be the beneficiaries thereunder.

This evidence was not objected to. The proceeds of the policy were paid, after his death, to his administrator, who holds the same subject to the decision of this controversy as to ownership of such proceeds.

The decision of this question involves the construction of the statutes brought forward in the compilation of Milliken & Vertrees as §§ 3135, 3335, and which are as follows:

"Section 3135. A life insurance effected by a husband on his own life shall inure to the benefit of the widow and next of kin, to be distributed as personal property free from the claims of his creditors."

"Section 3335. Any life insurance effected by a husband on his own life shall, in case of his death, inure to the benefit of his widow and children, and the money thence arising shall be divided between them according to the law of distribution, without being in any manner subject to the debts of the husband, whether by attachment, execution, or otherwise."

It is insisted for the creditors that it is only such life insurance as is effected by the husband as husband, during the existence of the marital relation, that is thus referred to and regulated, and that an insurance effected before the marriage relation begins is not contemplated by these statutes and does not fall within their provisions.

In Sutherland on Statutes and Statutory Construction, it is said, in substance, that the "presumption is that the lawmakers have a definite purpose in every enactment, . . . and that purpose is an implied limitation on general terms and a touchstone for the expansion of narrower terms used in the statute. The

cardinal purpose of the act must control, and words and phrases must be read in such sense as will harmonize with the subject-matter and general purpose of the statute.''

Mr. Kent on the same subject says, in substance: '' In the exposition of a statute the intention of the lawmaker will prevail over the literal sense of the terms, and its reasons and intention will prevail over the strict letter.''

Sutherland on Statutes and Statutory Construction, Secs. 240, 241, 246, 219, says: '' Not only may the meaning of words be restricted by the subject-matter of an Act, . . . but for like reason they may be expanded. . . . The intention of the Act will prevail over the literal sense of its terms. . . . The particular inquiry is not what is the abstract force of the words used, but in what sense were they intended to be used as found in the Act. This sense is to be collected from the context, and a narrower or more extended meaning is to be given according to the intention thus indicated.''

Accordingly, in *Silver* v. *Ladd*, 7 Wall., 219, the term ''single man'' was held to include an ''unmarried woman'' in the construction of the Oregon donation Act of Congress.

In *Ragland* v. *Justices*, 10 Ga., 65 and 71, a minor with his living parents was held to be an orphan, in order to make the statute in question fully answer its obvious purpose and intention.

In *Richardson* v. *Duncan*, 2 Heis., 220, it was

held by this Court that an "ass" was within the meaning of the law exempting from execution a horse, mule, or yoke of oxen in the hands of a person engaged in agricultural pursuits.

So, in *Webb* v. *Brandon*, 4 Heis., 288, it was held that an "ox wagon" was embraced under the words of the statute exempting an "ox cart" or a "two horse wagon."

The evident object and purpose of the acts in controversy was to privide for the widow and children, and, in default of them, for the next of kin of the assured upon his death, in the event he did not direct in the policy or. by assignment or by his will or in some other mode, that other persons should be the beneficiaries thereunder. *Harvey, Admr.*, v. *Harrison*, 5 Pick., 476.

That he might so direct cannot, under our decisions, be questioned. But in order to do so in the policy, he must use apt words for that purpose, indicating his intention that the proceeds should be paid to parties other than the wife and children or next of kin; or else the proceeds will pass under the statute.

Without now attempting to decide upon the use of particular words and phrases as indicating this intention, we are content to hold that the language used in this policy designating the payees as "the legal representatives of the assured," does not indicate an intention to direct the proceeds to any other person than those entitled under the law, to wit: the widow and children or next of kin, but, under this

language, the proceeds will pass, as the statute directs, to the widow and children, or, if there be no widow or children, then to the next of kin under the law, who are, in the sense in which the terms are here used, "the legal representatives of the assured." It cannot be held that the term legal representative was intended to mean the executor or administrator of the deceased, so as to give them a beneficial interest in the recovery, but is intended to designate those who, under the law, succeed to the personal estate of the deceased.

It was intended by the statute to provide a fund for the widow and children and next of kin, which, upon the assured's death, should go to them free from the claims of creditors, and, like other exemption laws, they have been liberally construed to carry out the general purpose. *Collier* v. *Latimer*, 8 Bax., 420; *Jackson, Orr Co* v. *Shelton*, 5 Pick., 82; *Harvey, Admr.*, v. *Harrison*, 5 Pick., 470.

It is difficult to see why the widow and children of a party who took out his life insurance before he married should not stand upon the same footing and have the same rights as the widow and children of a party who obtained such insurance after he was married, when there is no indication in the policy that the assured intended it to go otherwise.

It will be noticed that the Act does not say when the insurance should be "effected," whether during the marital relation or previous thereto, and an easy and natural interpretation will embrace that "effected"

before as well as that after the marriage occurred. Again, life insurance is made "effectual" by the payment of premiums at fixed intervals, and the insurance for any particular time is "effected" when the premium for that time is paid. In case of this policy, it was "effected" every six months for the ensuing six months.

The fact that the proceeds of life policies are paid to and collected by the executor or administrator of the assured does not in any way make the proceeds assets of the estate for the payment of debts, but it goes to the widow and children or next of kin free from the debts, whether the estate is solvent or insolvent. *Harvey, Admr.*, v. *Harrison*, 5 Pick., 470; *State, Use, etc.*, v. *Anderson*, 16 Lea, 338.

It is urged that the North American Guaranty Company has a special equity, as against the proceeds of this policy, from the fact that it became surety upon the decedent's bond as a railroad station agent, and was compelled to pay something over $600 on account of his default as such agent, and because, when he made application to the company to become his surety on such bond, he stated that he had a policy upon his life payable to his estate, and this was one of the considerations moving the company to go upon said bond.

This is not material to the question now before us. If the company desired the security of this policy, they should have secured it by an assignment

or such other proper proceeding as was necessary to fix a lien upon it which the law could recognize.

We think there is no error in the decree of the Chancellor, nor in the able opinion of the Court of Chancery Appeals delivered by Judge M. M. Neil, and which we have used liberally in this opinion, and the decree of that Court and the Chancellor is affirmed with costs.