STATE *v.* AKIN.

*(Nashville.* December Term, 1903.)

1. **CONSTITUTIONAL LAW.** Power of the legislature to redistrict a county, reaffirmed.

It is now settled law in this State that the legislature has the right to redistrict a county and abolish the offices of justices of the peace.in civil districts extinguished by such redistricting. (*Post, p.* 607.)

Case cited and approved: The Redistricting Cases, 111 Tenn., 234. ·

2. **SAME.** Reducing number of districts does not abolish county court. Case in judgment.

The general assembly, by a statute properly enacted (Acts of 1903, ch. 363) redistricted Maury county, and abolished a number of civil districts by merging them with other original districts which were not extinguished, thereby reducing the number of districts in the county from twenty-five to nine. The defendant was indicted for falsely assuming to be a justice of the peace and acting as such for one of the districts which had been abolished by said act. Upon demurrer raising the question, the act was held by the trial judge to be unconstitutional and the indictment was quashed. The State appealed.

*Held*: 1. The legislature had full power to redistrict the county and abolish the office of justice of the peace in civil districts extinguished thereby;

2. The statute was not unconstitutional on the ground that it abolished the county court, because that court is composed of the justices of the peace of the districts, and the number of districts is immaterial.

Cases cited and approved: The Redistricting Cases, 111 Tenn., 234; Colbert v. Bond, 110 Tenn., 370; Railway v. Wilson County, 89 Tenn., 600.

Case cited and distinguished: Pope v. Phifer, 3 Heisk., 682.

State v. Akin.

**3. OFFICE. Vacancy in, how filled.**

Where an office is newly created, there is a vacancy therein, within the meaning of the constitutional provision that "the election of all officers and the filling of all vacancies, not otherwise directed or provided by this constitution, shall be made in such manner as the legislature shall direct." (*Post, p.* 608.)

Case cited and approved: Condon v. Maloney, 108 Tenn., 82.

FROM MAURY.

Appeal from the Circuit Court of Maury County.— SAM HOLDING, Judge.

ATTORNEY-GENERAL CATES, for the State.

E. H. HATCHER, C. B. HATCHER, GEORGE T. HUGHES, and H. P. FIGUERS, for Akin.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The defendant in error was indicted for falsely assuming to be a justice of the peace, and taking upon himself to act as such for the fifteenth civil district of Maury county, as was alleged, after that district had been abolished by chapter 363, page 1093, of the Acts of the legislature of the year 1903. Upon demurrer raising the question, this act was held by the trial judge to be unconstitutional, and the indictment was quashed.

The State, on appeal, has assigned error on this action.

The objection raised to this act in the lower court, and renewed here, is that its purpose and effect is to destroy the county court of Maury county, and, this being so, it is void, because, as is insisted, that court is placed by the constitution beyond legislative impairment or destruction. While the case of *Pope* v. *Phifer,* 3 Heisk., 682, announces that the county court is a constitutional court, yet it must be considered that the later utterances of this court have thrown grave doubt upon the soundness of that doctrine. In *Railway* v. *Wilson County,* 89 Tenn., 600, 15 S. W., 446, it was said: "Though the county court existed in some form in North Carolina before the organization of this State, and may be said to have been recognized by our constitution of 1796 as one of the institutions of the State then existing, it is nevertheless a court of statute merely, possessed alone of statutory jurisdiction, and wholly wanting in common-law powers." In the still more recent cases of *Colbert* v. *Bond* and *Glisson* v. *Galloway,* 110 Tenn., 370, 75 S. W., 1061, it is distinctly stated that "the county courts were created by the general assembly under the authority given it in the constitution to ordain and establish such inferior courts from time to time as might be necessary, and [they] have only such jurisdiction and power as has been expressly vested in them by enactments of the legislature. . . ."

It is unnecessary, however, to press this view, as,

upon an examination of the act in question, we see nothing in its provisions to warrant the contention of the defendant in error that the legislative purpose was to destroy the county court of Maury county. It certainly is not avowed in the face of the act, and we do not think it inferable from its terms. It was the clear intention of the legislature to reduce the civil districts of the county from twenty-five to nine, but that court could as well exist and exercise all its statutory jurisdiction with the smaller as with the larger number of districts. It abolished certain districts by merger, but new justices of the peace from the new districts, when elected and commissioned, could perform all the functions of members of that court, as did the justices from the old and extinct districts. It will be seen the integrity of that court is in no way assailed by the act.

Before coming to examine more carefully its provisions, it is apparent that at the time of its passage there were twenty-five civil districts in the county, numbered from one to twenty-five, inclusive. It is conceded that civil district No. 9 was not interfered with. It was left intact, and, as a matter of course, the term of office of the justices elected for that district was not affected by this legislation.

We will now consider the act in so far as it deals with the other civil districts of the county. By reference to it, it will be seen that it provides for civil district No. 1 in these words: "Civil district No. 1 shall embrace . . . districts Nos. 1, 17 and 18 as now established

and existing." We do not understand that by this it was intended to destroy original district No. 1; on the contrary, to recognize it as still existing. In the new or statutory enumeration of civil districts, as in the old, it is No. 1; and, instead of being abolished, it has civil districts Nos. 17 and 18 added to or merged in it. The effect of this is not to destroy, but to preserve, the old district, with its limits extended by adding new territory. The same thing is done with regard to original civil districts Nos. 4 and 5. With No. 4 are merged civil districts Nos. 3, 21, and 24, and No. 6 is merged with original civil district No. 5. So it is that the act leaves one of the civil districts of that county untouched, and three others with enlarged boundaries; resulting necessarily in the destruction of those districts whose territory is taken for this enlargement. The other five of the nine districts are provided for by the extinction of the remainder of the twenty-five original districts.

That the legislature has the right to redistrict a county, and abolish the offices of justice of the peace in civil districts extinguished by such redistricting, has been recently held by this court, in the *Redistricting Cases,* 111 Tenn., 234, in an opinion by Neil, J.

It was there held, when these "constituent organizations [civil districts] are in any manner lawfully abolished, that the justices of the peace dependent thereon must always lose their place in the system." From this it necessarily follows that all the justices in the extinguished districts of which civil district No. 15 was one,

*eo instanti,* terminated their official life, and were thereafter without power to exercise any of the functions of office. It was otherwise, however, with those justices representing the civil district not interfered with by the act, as well as those elected from districts Nos. 1, 4, and 5, the boundaries of which, as has been seen, were simply enlarged.

There need be no embarrassment of the affairs of the county from this legislation. Not only, under this construction, are the justices of the peace for four districts left unaffected, but the places of the justices for the other five civil districts can be filled by an election held after ten days' notice given by the proper authorities, for, notwithstanding these five are new districts, yet the places to be filled in them are "vacancies," within our statutes. *Condon* v. *Maloney,* 108 Tenn., 82, 65 S. W., 871.

It follows that the circuit judge was in error in quashing the indictment, and the judgment is therefore reversed, and the case is remanded.