WILLIAM MAXEY et al. v. J. PIKE POWERS, JR., et al.

(*Knoxville.*   September Term, 1906.)

1.   **CONSTITUTIONAL LAW.** Statute redistricting a county is
not invalid because the districts are laid off in inconvenient
sizes or shapes, and are disproportionate, when.

The statute (Acts 1903, ch. 424), abolishing certain districts of
Knox county  and redistricting the county, is constitutional
and valid, though the districts as laid off in the statute are
disproportionate in area, wealth, and population and of shape
inconvenient to their inhabitants, since the power to create
the districts is a political power vested in the legislative de-
partment to be exercised in its discretion, and when it has ex-
ercised this discretion its action is final and conclusive, and not
subject to review by the courts.   (*Post, pp.* 386, 389-398.)

Acts cited and construed:   1903, ch. 424.

Constitution cited and construed:   Art. 6, sec. 15; art. 2, secs.
1 and 2.

Cases cited and approved:   Stewart v. Roberts, 1 Yerg., 389;
Maury County v. Lewis County, 1 Swan, 240; Railroad v. Dav-
idson County, 1 Sneed, 687; Winston v. Railroad, 1 Baxt., 73;
Lipscomb v. Dean, 1 Lea, 546; Burnett v. Maloney, 97 Tenn.,
697; Redistricting Cases, 111 Tenn., 241, 254; State v. Akin,
112 Tenn., 603; State v. Hamby, 114 Tenn., 361.

2.   **SAME.** Special statute redistricting a certain county is not
invalid as arbitrary and vicious class legislation.

The statute (Acts 1903, ch. 424), abolishing certain districts of
Knox county and redistricting the county, though a special law,
is not obnoxious to the constitution, as arbitrary and vicious
class legislation.   (*Post, pp.* 389, 398, 399.)

Acts cited and construed:   1903, ch. 424.

Constitution cited and construed:   Art. 11, sec. 8.

Cases cited and approved: Redistricting Cases, 111 Tenn., 241, 254; State v. Akin, 112 Tenn., 603; State v. Hamby, 114 Tenn., 361.

3. **SAME.** Election of justices of the peace at regular election before statute creating new districts takes effect on the first day of September, 1906.

Where the statute (Acts 1903, ch. 424), abolishing certain districts of Knox county and redistricting the county, provided that it should take effect on the first day of September, 1906, at which time the terms of the then incumbents of the offices of the justices of the peace in the abolished districts expired, it was proper to hold elections to fill the offices of the justices of the peace in the newly created districts on the first Thursday in August, 1906, as provided by the constitution and statutes. (*Post, pp.* 385, 399 404.)

Code cited and construed: Secs. 424-427, 1154, 1155 (S.); secs. 389-392, 1020, 1021 (M. & V.); secs. 825f, 825g (T. & S.); secs. 336-339 (T. & S. and 1858).

Acts cited and construed: 1903, ch. 424.

Constitution cited and construed: Art. 6, sec. 15; art. 7, sec. 5.

4. **STATUTORY CONSTRUCTION.** Statutes to be construed so as to make them effective, if possible; presumption against unconstitutionality.

Statutes must be construed, if possible, so as to make them sensible, and to effect and carry out the purposes for which they are enacted; and it is not to be presumed that the legislature will pass a defective or insensible act or one in conflict with the constitution. (*Post, p.* 403.)

Cases cited and approved: Rose v. Wortham, 95 Tenn., 508; Wise v. Morgan, 101 Tenn., 282.

5. **SAME.** Same. Intent will prevail over strict letter or literal sense; general terms limited; narrow terms expanded, when.

The legislative intent will prevail over the strict letter or literal sense of the language used, and, in order to carry into effect

Maxey v. Powers.

this intent, general terms will be limited, and those that are narrow expanded. (*Post, pp.* 403, 404.)

Cases cited and approved: Rose v. Wortham, 95 Tenn., ⁵⁰5; Lewis v. Mynatt, 105 Tenn., 512-514.

FROM KNOX.

Appeal from the Chancery Court of Knox County.— JOSEPH W. SNEED, Chancellor.

TEMPLETON & TEMPLETON, for complainants.

J. C. FORD and J. PIKE POWERS, JR., for defendants.

MR. JUSTICE SHIELDS delivered the opinion of the court.

The general assembly of Tennessee April 15, 1903 (Acts 1903, p. 1220, c. 424), passed an act for the purpose of redistricting Knox county, the caption and body of which are as follows:

"An act to abolish certain districts of Knox county, Tennessee, to redistrict county, to regulate the manner of increasing the districts in the county hereafter, and to abolish the offices of justices of the peace and other district officers in the abolished districts.

"Section 1.    Be it enacted by the general assembly

of the State of Tennessee, that the second, fourth, fifth, ninth, twelfth, fourteenth, fifteenth, seventeenth, twentieth, twenty-first, twenty-second and twenty-third districts of Knox county, as the same have heretofore and up to this time been constituted and existing, be, and the same are hereby, abolished.

"Sec. 2.   [This section merely attaches the territory of the districts abolished to certain of those left in existence, and renumbers the latter.]

"Sec. 3.   Be it further enacted, that the seventh, tenth and eleventh civil districts shall remain as they are now constituted by law, and retain the same numbers by which they are now designated, and also that the twenty-fourth civil district shall remain as now constituted but shall be known as the twelfth civil district of Knox county.

"Sec. 4.   Be it further enacted, that the city of Knoxville shall have two additional justices of the peace, which shall be elected at the next regular election in 1906.

"Sec. 5.   Be it further enacted, that no civil dist icts in excess of the twelve districts hereby created and established, shall be created out of any of the territory of said county, unless authorized by an act of the general assembly of the State of Tennessee.

"Sec. 6.   Be it further enacted, that from and after the first day of September, 1906, the offices of the justice of the peace and of all other civil district officers in the districts abolished, be, and the same are hereby, abol-

ished, and shall cease to exist, and the justices and other civil officers of the districts abolished by this act shall turn over to the justices and officers not affected by this act, all their docket books, papers and documents pertaining to their respective offices, that all law books, codes, acts of the general assembly, maps, etc., belonging to the county, shall within thirty days from the passage of this act, be delivered to the clerk of the county court of Knox county: Provided, that the road districts may remain as heretofore constituted.

"Sec. 7. Be it further enacted, that this act take effect on the first day of September, 1906, the public welfare requiring it." Chapter 424, p. 1220, Acts 1903.

The county court of Knox county, being uncertain of the proper construction and scope of this act, and doubtful of the power of the election officers of the county to hold an election for the election of the justices of the peace and constables for the county as redistricted, at the general August election, 1906, because of the provision that the act should take effect September 1, 1906, and the absence of a provision authorizing such an election, to prevent the confusion that might follow in the administration of the affairs of the county in the event no valid election should be held, and conceiving that, if the act did not take effect in any respect until September 1, 1906, the authority which it had theretofore had

under Code, section 78 (Shannon's Code, sec. 96), authorizing the county court of any county to change the boundaries of any civil district and make new districts, or redistrict the county entirely when necessary, by means of commissioners appointed by the court, or otherwise, continued in it until that time, at its January term, 1906, made an order in the form of a resolution, a lawful quorum being present, redistricting the county precisely as had been done by the general assembly, save that the resolution provided that it take effect on the third Monday of July, 1906. This was a precautionary measure to secure a valid election in case the election commissioners were not otherwise authorized to hold an election for the election of justices of the peace in August, 1906.

The twelve civil districts created by the act of the general assembly and the resolution of the county court were and are unequal in area, wealth, and population, and the difference in these important particulars in many of them is quite great. The new third district, composed of the old thirteenth, fourteenth, and twenty-first districts, is eighteen miles long, about four and one-half miles wide, and contains a population of 5,911 people.

The defendants, J. Pike Powers, Jr., J. C. Ford, and J. C. Sterchi, the election commissioners of the county, concluding that the county had been lawfully redistricted into twelve civil districts by the statute, or the resolution of the county court, or both, in all things as set forth in those proceedings, held an election in and for the new

districts created for justices of the peace, constables, and other officers to be elected at the general election in August, 1906.

The complainants, Wm. Maxey and J. H. Simpson, citizens of the territory formerly constituting the thirteenth civil district, and, under the redistricting proceedings stated, now a part of the third civil district of Knox county, and constituting one of the voting precincts of that district, were candidates for justice of the peace for the third district in that election.

The defendants I. C. King and Monroe Johnson, who were citizens of the territory formerly constituting the fourteenth civil district of Knox county, and now a part of the third district, were also candidates for the same office in that district. The vote for each of these candidates in the old thirteenth district was as follows:

Wm. Maxey, 41.

J. H. Simpson, 34.

Monroe Johnson, 112.

I. C. King, 98.

That of each in the entire new third district was as follows:

Wm. Maxey, 63.

J. H. Simpson, 71.

Monroe Johnson, 652.

I. C. King, 636.

William Maxey was a justice of the peace for the old thirteenth district as it existed before the redistricting proceedings; his term of office expiring September 1,

1906, or upon the election and qualification of his successor, as that district was not destroyed by the redistricting proceedings, but only other territory added to it, and its designation changed to that of the third civil district of Knox county.

This bill was brought by complainants, William Maxey and J. H. Simpson, against J. Pike Powers, Jr., J. C. Ford, and J. C. Sterchi, as election commissioners, and I. C. King and Monroe Johnson, their successful opponents, to have the said election of justices of the peace for the third civil district of Knox county, as now constituted, declared and adjudged void, upon the ground that the act of the general assembly was and is unconstitutional and void, or, if valid, had not gone into effect when said election was held, and that the resolution of the county court of Knox county was void for want of authority in that court to pass it, or if it had the authority to do so, because such authority was abused and exceeded; to enjoin the election commissioners from issuing certificates of election to the defendants I. C. King and Monroe Johnson, and the two latter from receiving such certificates, and taking the oath, qualifying, and acting as justices of the peace; and, further, for a mandatory injunction commanding the election commissioners to issue certificates of election to complainants as the lawfully elected justices of the peace of the old thirteenth civil district of Knox county. A fiat was granted to the extent of the restraining relief sought.

The contentions of the complainants may be stated under three heads:

(1)   That the act of the general assembly (chapter 424, p. 1220, of the Acts of 1903) redistricting Knox county is in contravention of article 6, section 15, of the constitution of Tennessee, authorizing the general assembly to lay off the several counties of the State into civil districts of convenient size, and also of article 11, section 8, providing that the general assembly shall not have power to suspend any general law for the benefit of any particular individual, nor pass any law for the benefit of individuals inconsistent with the general laws of the land, or any law granting to any individual or individuals rights, privileges, immunities, or exemptions other than such as may, in the same law, extend to any member of the community who may be able to bring himself within the provisions of such law, in that the civil districts into which Knox county is divided by the statute and resolution in question, especially that designated as the third civil district of Knox county, are not of size convenient to their inhabitants, and are radically unequal and disproportionate in area, wealth, and population.

(2)   That chapter 424, p. 1220, of the Acts of 1903, if valid, did not by its terms go into effect until September 1, 1906, and, the resolution of the county court being without authority and void, the election held for justices of the peace for the twelve new districts created by said act was premature, without authority, and void,

and the old thirteenth district, not having been abolished, but existing under the designation of the third civil district of Knox county, complainant William Maxey is entitled to hold his office of justice of the peace for that district until his successor shall be elected and qualified.

(3) That the resolution of the county court of Knox county is void, because the general assembly, by chapter 424, p. 1220, of the Acts of 1903, had revoked and withdrawn the authority delegated by section 78 of the Code to county courts to redistrict counties.

We will first consider whether chapter 424, p. 1220, of the Acts of 1903, redistricting Knox county, is a valid and constitutional law, and, if so, whether the election commissioners of Knox county were authorized to hold an election in the twelve districts created by it, as they did, for the election of justices of the peace and constables for the said districts, as provided by the act, at the election held by them under the general law on the first Thursday in August, 1906.

If these questions are decided in favor of the validity of the statute and the election held, they will be conclusive of the case, and, it will not be necessary to consider the validity of the resolution of the county court.

The merits of the case, these questions out of the way, are with the defendants, as there is no controversy but that I. C. King and Monroe Johnson each received a large majority of the votes cast for justices of the peace in the third civil district at said election, and that, if

the election was valid, they are entitled to certificates of election.

The first provision of the constitution invoked by the complainants in their attack upon chapter 424, p. 1220, of the Acts of 1903 (article 6, section 15), is in these words:

"*Civil districts.* The different counties of this State shall be laid off as the general assembly may direct into districts of convenient size, so that the whole number in each county shall not be more than twenty-five, or four for every one hundred square miles. There shall be two justices of the peace and one constable elected in each district by the qualified voters therein, except districts including county towns, which shall elect three justices and two constables. The jurisdiction of said officers shall be coextensive with the county. Justices of the peace shall be elected for the term of six, and constables for the term of two, years. Upon removal of either of said officers from the district in which he was elected, his office shall become vacant from the time of such removal. Justices of the peace shall be commissioned by the governor. The legislature shall have power to provide for the appointment of an additional number of justices of the peace in incorporated towns."

The complainants insist that, because the twelve districts laid off by the general assembly in this act are disproportionate in area, wealth, and population, and of shape inconvenient to their inhabitants, the act violates the provision that the districts shall be of convenient

size. . This attack is specially directed to the provision creating the third civil district, in which they reside and were candidates for justices of the peace.

The defendants, without conceding complainants' premises, maintain that the subdivision of counties into civil districts is a political matter, of which the general assembly, both under its inherent sovereignty and control over the political affairs of the State and the provision invoked, has exclusive jurisdiction, and that its discretion and judgment, in the exercise of this power, is absolute and final, and not reviewable by the courts.

The powers of government are, under our constitution, divided into three distinct departments—the legislative, executive, and judicial, and neither of these departments is allowed to exercise any of the powers belonging to either of the others, except as in that instrument directed or permitted. Const., art. 2, secs. 1 and 2. Thus each department is limited in its operations to the particular matters intrusted to it, and each, while not violating the organic law, is supreme in such matters. It is true the courts have jurisdiction to declare void and inoperative all legislation enacted by the general assembly which contravenes any provisions of the constitution; but the legislative department is vested with certain powers in the exercise of which its discretion and judgment is absolute. .

The general rule is that where one of the departments of the State is vested with a power, to be exercised when and in such manner as those charged with its exercise

Maxey v. Powers.

may consider expedient and proper in its discretion, the action of the department cannot be interfered with by any other department. This is especially so in matters of a political character.

Judge Cooley, in his work on Constitutional Limitations (6th Ed.), p. 54 [7th Ed., pp. 73, 74], says:

"Every department of the government, and every official of every department, may, at any time when a duty is to be performed, be required to pass upon a question of constitutional law. Sometimes the case will be such that the decision, when made, must, from the very nature of things, be conclusive and not subject to appeal or review, however erroneous it may be in the opinion of other departments or officers; but in other cases the same question may be required to be passed upon again before the duty is completely performed. The first of these classes is where, by the constitution, a particular question is plainly addressed to the discretion or judgment of some one department or officer, so that the interference of any other department or officer with a view to the substitution of its own discretion or judgment in the place of that to which the constitution has confided the decision, would be impertinent and intrusive. Under every constitution, cases of this description are to be met with; and, though it will sometimes be found difficult to classify them, there can be no doubt, when the case is properly determined to be one of this character, that the rule must prevail which makes the decision final."

And he cites, as an instance where the decision of the legislature is final, its action in providing that a statute shall take effect at once, the public welfare requiring it, in pursuance of a constitutional provision authorizing such action in an emergency.

The creation and organization of counties and the subdivision of them into civil districts is a political power, vested in the general assembly, to be executed, within constitutional limits, in its discretion. This fully appears from a consideration of the nature and *status* of counties and their subdivisions.

"Counties, townships, school districts, and road districts," says Judge Cooley, "do not usually possess corporate powers under special charters; but they exist under general laws of the Sate, which apportion the territory of the State into divisions for convenience of government, and require of people residing within those divisions the performance of certain public duties as a part of the machinery of the State, and, in order that they may be able to perform these duties, vest them with certain corporate powers. Whether they shall assume those duties or exercise those powers, the people of the political divisions are not allowed the privilege of choosing. The legislature assumes this division of the State to be essential in republican government, and the duties are imposed as a part of the proper and necessary burden which the citizens must bear in maintaining and operating constitutional liberty. Usually their functions are wholly of a public nature, and there is no room

to imply any contract between them and the State in their organization as corporate bodies, except that which springs from the ordinary rules of good faith, and which requires that the property they shall acquire by local taxation or otherwise for the purposes of their organization shall not be seized by the State and appropriated in other ways." Cooley's Const. Lim. (6th Ed.), p. 294.

This court has had frequent occasions to define the nature and powers of counties, and we will call attention to a few of the cases upon the subject.

Judge Whyte, in an early case (*Stewart* v. *Roberts*, 1 Yerg., 389), speaking for the court, said:

"What is a county, in our political association? It is a political community, formed by the constitution and acts of assembly, having its rights, its duties, its obligations, its privileges, its officers, civil, military, judicial, and ministerial, the field of the action of all, which is local and limited to the confines of the county. These rights, duties, offices, etc., are exercisable in the county by the body politic, or community composing the county, exclusive of the agency of the officers, etc., of any other community or county."

In the case of *L. & N. R. R. Co.* v. *County Court*, 1 Sneed, 687, 62 Am. Dec., 424, Judge Caruthers delivering the opinion of the court, it is said:

"Counties are not corporations, but civil and political divisions of the State. For some purposes they are merely civil divisions, but for others they certainly are corporations. They are therefore sometimes called

'quasi corporations.' They are political aggregate corporations, capable of exercising such powers as they may be vested with by the legislature."

And in *Maury Co.* v. *Lewis Co.*, 1 Swan, 240, it is said:

"Now, a county is a public corporation created by the government for political purposes, and invested with subordinate legislative powers to be exercised for lawful purposes connected with the public good, and such powers are, in general, subject to the control of the legislature of the State."

These cases were decided before the adoption of our present constitution, but they apply equally to counties under it. They are cited with approval in the late cases of *Winston* v. *Tennessee & Pacific R. R. Co.*, 1 Baxt., 73, and the *Redistricting Cases*, 111 Tenn., 254, 255, 80 S. W., 750.

This subject was thoroughly considered in the case of *Burnett* v. *Maloney*, 97 Tenn., 697, 37 S. W., 689, 34 L. R. A., 541. The holding of the court in that case upon the creation and powers of counties in Tennessee is well stated in the headnote to the case in these words:

"Counties owe their creation to the statutes, and the statutes confer on them all the power which they possess, prescribe all the duties they owe, and impose all the liabilities to which they are subject. Considered with respect to their powers, duties, and liabilities, they stand low down in the scale of corporate existence. They are ranked as quasi corporations. They possess no powers except such as are conferred expressly or by neces-

Maxey v. Powers.

sary implication, and those are strictly construed and must be strictly pursued."

Civil districts are but territorial subdivisions of counties. Their chief use is in regulating the number of justices of the peace allowed counties and in holding elections. They cannot be clothed with corporate life, nor vested with legislative power or other governmental function. *Lipscomb* v. *Dean,* 1 Lea (Tenn.), 546.

Counties and civil districts — for the latter can have no existence aside from counties — it is clear from these authorities, are essentially political divisions and subdivisions of the State, created for public and political purposes; that is, convenience in the administration of the law and the exercise of the functions of the State. The former are quasi corporations, having such powers as have been delegated to them by the general assembly, which they hold at its pleasure, chief of which is the power of legislating upon certain local matters, lodged in a body created by the legislature, composed of the justices of the county. The later are, as said, mere territorial districts, with no powers.

The power to create them, then, it is obvious, is vested in the legislative department of the State. Whether it is inherent in the general assembly, or is vested in it by article 6, section 15, of the constitution, is immaterial. It is, we think, from whatever source it may be derived, a political power, the exercise of which is intrusted solely to the judgment and discretion of the general assembly, and when it has exercised this discretion,

its action is final, and its correctness cannot be chal-
lenged by either of the other departments of the gov-
ernment. This, we think, is in substance and effect held
in the cases decided by this court sustaining special
statutes enacted for the purpose of redistricting several
counties of the State. *Redistricting Cases*, 111 Tenn.,
241, 80 S. W., 750; *State* v. *Akin*, 112 Tenn., 603, 79 S.
W., 805; *State* v. *Hamby*, 114 Tenn., 361, 84 S. W., 622.

The general assembly had the exclusive and absolute
power to lay off Knox county into civil districts. How
it should execute this power was for it to determine. It
must be assumed that it had the proper data and in-
formation before it to do so intelligently, and that the
districts created by it are of convenient size for their
primary purpose, the efficient administration of the law
in the county, and also in the interest and for the good
of the people affected. The courts have no jurisdiction
to inquire into these matters, and the civil districts must
stand as laid off by the act, until it is repealed or amend-
ed by the legislature.

Complainants also insist that the act is arbitrary and
vicious class legislation, and therefore obnoxious to arti-
cle 11, section 8, of our constitution. This question was
determined against them in the *Redistricting Cases*, su-
pra. It is there held that counties may be redistricted
by special statute in the discretion of the general assem-
bly. The principle involved has frequently been announ-
ced by this court in other cases, and it is well settled
that the general assembly, subject to certain constitu-

tional restrictions, may create municipalities and political subdivisions of the State by special statute, in such form and with such powers as to it may seem fit, and alter or abolish them at pleasure, without violating this provision of the organic law. The cases upon this subject are numerous, and the validity of this character of legislation well established.

The next question to determine is whether the election commissioners of Knox county were authorized to hold an election for justices of the peace for the twelve districts of the county as redistricted, to hold for the constitutional term of six years from September 1, 1906, the time when the terms of those in office in the old districts expired by law.

We are of the opinion that they had such power, and that the election held by them was valid. We think, from a consideration of the entire statute, that the object of providing that the act should take effect on September 1, 1906, as done in its seventh section, was to allow the then incumbents of the offices of justices of the peace in the districts abolished to hold out their constitutional term of six years, which expired that day, and that it was not intended to interfere with the election of their successors, the justices provided for in the redistricting act, at the regular election to be held at the time fixed by law. The act contains no express provision authorizing the election of justices of the peace for the new districts. It was not necessary that it should do so. The offices of justices of the peace for Knox coun-

ty were not created by it. They existed before its enact-
ment, and it only fixed their number and the territory
in which they should be elected.

The constitution (article 6, section 15, and article 7,
section 5) and the general law providing for the elec-
tion of county officers (Code, secs. 336-339; Shannon's
Code, secs. 424-427, 1154, 1155) authorized and re-
quired that an election be held on the first Thursday in
August preceding the expiration of the constitutional
term of six years, September 1, 1906, of the then incum-
bents, for the election of two justices of the peace for
each civil district, except that containing the county
seat, in which three were to be elected, and those allowed
by special provisions for incorporated towns in every
county in the State. It must be presumed that the gen-
eral assembly had these provisions in mind when it pro-
vided that the act in question should not go into effect
until September 1, 1906, and intended that an election
be held under them for election of officers for the newly-
created districts. This is evidently the reason why no
provision was made for an election of such officers before
the day upon which the act should become effective.

The constitution is the fundamental law of the State,
and every statute enacted by the general assembly must
be construed in the light of its provisions. Those pro-
visions applicable to the particular legislation in hand
are to be considered as written into it and a part of it.
Those we have cited are mandatory and imperative.
They require the election commissioners of Knox county

Maxey v. Powers.

at the general election to be held by them on the first Thursday of August, 1906, to provide for the election of justices of the peace for the county to succeed those in office whose terms expired September 1, 1906, and to hold for the constitutional term of six years thereafter. They required them to hold the election for the number the county would be entitled to during the time for which they were to be elected and in the territory or districts they were to represent. This they could do by reference to the redistricting act, although it was not in effect at the time the election was to be held. It—the redistricting act — had been duly enacted and placed upon the statute books of the State by the proper authority. While no rights can vest under a statute until it becomes effective, yet it is notice to every one of what will be the law upon the date it takes effect, and all must so conduct themselves as to conform to its provisions when effective. This is specially true in regard to public officers whose duties are affected by the law. The officers elected at that election were, under the constitution, to serve for six years from and after the 1st day of September succeeding the election for the civil districts as they would exist upon the day they were qualified and inducted into office. They were not to be elected, as insisted by complainants, in and for the civil districts of the county as they existed upon the day of the election, because those elected could not qualify or serve before the 1st day of September succeeding, when

117 Tenn—26

those districts would cease to exist and have no officers, nor to serve from the time between the election and September 1, for there were no vacancies to be filled for that period. The redistricting act took effect on the first moment of September, 1906, and, had an election been held for justices from the old districts, they could not have been qualified for even a fraction of a day. The policy of the law is that the successor of every officer whose term is about to expire shall be previously elected and ready to qualify and enter upon the discharge of the duties of the office at the expiration of the term of his predecessor, and that no one shall hold an office for a period beyond the time for which he is elected. In furtherance of this policy, the constitution and the statutes enacted to carry it into effect require that all judicial and county officers of the State shall be elected on the first Thursday in August of the year in which such election occurs, although the terms of the then incumbents by the same laws do not expire until the 1st day of September thereafter and those of the officers elected do not begin until that day.

The act passed at the same session of the general assembly as the one now in question for the purpose of redistricting Cumberland county (chapter 599, p. 1563, of the Acts of 1903) contains a provision directing the commissioners of election of that county to hold an election upon May 7, 1903, the day provided for the act to go into effect, for the election of officers for the new districts. This was deemed necessary in that case, because

no general election occurred between the passage of the act and the day provided for it to take effect. In this case the day fixed for the act to take effect is the same day upon which the constitutional terms of the then incumbents of the offices affected expired by law, and upon which their successors, elected at the general election required by the constitution to be held throughout the State immediately preceding, would be elected.

The construction of this act contended for by the complainant would lead to the most absurd consequences. The election commissioners of Knox county would be required to hold elections for officers of civil districts to serve for terms at a time when it was known said districts would not be in existence. They would be required to hold elections for officers whose offices would cease to exist before the day fixed by law for them to qualify and be inducted into office. We cannot presume that the legislature intended this. Statutes must be construed, if possible, so as to make them sensible, and to effect and carry out the purposes for which they are enacted. It is not to be presumed that the lawmakers will pass a defective or insensible act, or one in conflict with the organic law. *Wise & Co.* v. *Morgan,* 101 Tenn., 282, 48 S. W., 971, 44 L. R. A., 548; *Rose* v. *Wortham,* 95 Tenn., 508, 32 S. W., 458, 30 L. R. A., 609.

The legislative intent will prevail over the strict letter or literal sense of the language used, and, in order to carry into effect this intent, general terms will

be limited, and those that are narrow expanded. *Rose* v. *Wortham,* 95 Tenn., 505, 32 S. W., 458, 30 L. R. A., 609; *Lewis* v. *Mynatt,* 105 Tenn., 512-514, 58 S. W., 857.

The result is that the election commissioners of Knox county were not only authorized by law to hold said election, but it was their duty to do so, and said election is valid, and the officers then elected are entitled to the offices to which they were chosen.

It is unnecessary to pass upon the validity of the action of the county court in redistricting the county.

The decree of the court of chancery appeals, sustaining the bill of the complainants, is reversed, and the decree of the chancellor dismissing it is affirmed, with costs.