STATE OF TENNESSEE *ex rel.*, COMPLAINANT, APPELLEE, *v.* S. E. MAYES *et al.*, DEFENDANTS, APPELLANTS.*

(*Knoxville*, September Term, 1932.)

Opinion filed November 26, 1932.

---

*As to fixing term of public officers, see 22 R. C. L., 548, 550.

As to meaning of term "civil officers," see 22 R. C. L., 383; R. C. L. Pocket Part, title "Public Officers," section 15.

Ben R. Winnick, and Jennings & Wright, for complainant, appellee.

Kennerly & Key, for defendants, appellants.

Mr. Justice Cook delivered the opinion of the Court.

The relator, Mrs. Charles A. Waters, sued out the writ of mandamus to compel S. E. Mayes, the incumbent, to surrender to her as his successor the office of county tax assessor.

It appears from the petition that on the first Monday of October, 1931, Mr. Mayes was elected by the quarterly court of Knox County to fill out an unexpired term in the office of tax assessor. Thereafter, at the August election, 1932, the relator was elected by vote of the people and on September 1, 1932, qualified for the office by giving bond and subscribing to the official oath. When she demanded possession of the office the term of which, she avers, commenced September 1, after the election in August, the defendant refused to vacate it.

The defendant made no return of the alternative writ of mandamus but demurred to the petition, saying that it presented no cause of action, and by laws in force at the date of his election the unexpired term ran until January, 1933, and that he cannot be deprived of the term fixed by laws in force at the time of his election.

The chancellor held that upon the facts shown by the petition, relator was entitled to the office as of September 1, 1932, and granted the peremptory writ. The defendant appealed.

Through assignments of error it is insisted that by chapter 602, Acts of 1907, in force at the date of his election, the unexpired term of the office of tax assessor was from the period of his election by the quarterly court until January 1, 1933, and if this statute must give way to Article VII, Section 5, of the Constitution, as held in *State ex rel.* v. *Ritzius,* 164 Tenn., 259, that the office of tax assessor is an executive office and the expiration of his term is controlled by the second paragraph of Article VII, Section 5, of the Constitution. Article VII, Section 5, declares:

"Elections for judicial and other civil officers shall be held on the first Thursday in August, one thousand eight hundred and seventy, and forever thereafter on the first Thursday in August next preceding the expiration of their respective terms of service.

"The term of each officer so elected shall be computed from the first day of September next succeeding his election. The term of office of the governor and of other executive officers shall be computed from the fifteenth of January next after the election of the governor. No appointment or election to fill a vacancy shall be made for a period extending beyond the unexpired term. Every officer shall hold his office until his successor is elected or appointed and qualified."

In *State ex rel.* v. *Maloney,* 92 Tenn., 62, the court, referring to Article VII, Section 5, said:

"By these provisions a new era in the political history of the State is established. A certain day is named, from

which all official life thereafter shall be reckoned. Absolute uniformity in the time for the commencement and termination of every official term of officers of the same grade throughout the State is positively ordained. Though such uniformity had been of but small moment under the Constitution of 1834, it is now made paramount."

 While this concept of the constitutional intent was spoken in relation to a judicial office, it applies with equal force to the official term of all civil officers, a term that comprehends all executive, judicial and administrative officers, whether county or state.

In *State ex rel.* v. *Davis,* 159 Tenn., 693, the court, speaking of the classification of officers, said:

" 'Judicial and other civil officers' includes all officers required by law to be elected by popular vote. We are unable to except county superintendents of education on the theory either that they are not 'civil' officers, or that they are not constitutional officers. It seems to us to be immaterial whether they are of the latter class, and they come within the general term 'civil officers.' All government officers are civil officers, unless military. . . . Even should it be conceded, as contended, that a county superintendent is an 'administrative officer,' he would still be a 'civil officer' under this section of the Constitution."

And so an Act fixing the time of election of a county superintendent by popular vote at a date other than the regular August election was declared violative of the Constitution, the court saying: "By clear implication such officers are brought within the operation of Section 5, fixing the time for the holding of such general elections."

386

The term "civil officer" is used in contradistinction to military officer and covers all officers whether their duties are executive, legislative or judicial. 22 R. C. L., 383.

Reference to the Constitution of 1834 and to the Journal of the Constitutional Convention of 1870 suggests to the mind that the framers of the Constitution of 1870 used the term "civil officers" in lieu of "county officers" in designating the officials along with judicial officers, who were to be elected in August.

Article VII, Section 5, of the Constitution of 1834, provided:

"The legislature shall provide that the election of county officers, by the people, shall not take place at the same time that the general elections are held for members of the legislature and governor."

Under that Constitution judicial officers were appointed by the General Assembly. The provision was superseded by the Constitution of 1870 providing for the election of judicial officers at a general election in August. Before the adoption of Article VII, Section 5, of the Constitution of 1870, the Convention rejected a proposal to substitute a provision for the legislature to provide for the election of county officers by the people at the November election. That proposal was rejected, and Article VII, Section 5, adopted.

The evident purpose of the Framers of the Constitution was to provide for the election of all judicial and county officers on the first Thursday in August, their terms to be computed from September 1, after the election, and to provide for the election of the governor (Article III, Section 2) on Tuesday after the first Monday in November (Article II, Section 7). Neither of

these sections fix the time when the term of governor should begin. That was postponed for determination by the provision written into Article VII, Section 5. After declaring in that section that the term of judicial and other civil officers should begin September 1 after the August election, it was provided that the term of office of the· governor and other executive officers, evidently alluding to state offices that might be created to be filled at the November election, should be computed from the fifteenth day of January next after the election of governor. This provision, it is evident, referred to the governor and to state executive officers who might be elected in the November election. It could not be construed as relating to county officials elected in August.

 The question of whether or not the legislature could fix the beginning of the term of a county officer chosen at a general August election, contrary to the mandate of the Constitution, was involved in the recent case of *State ex rel.* v. *Ritzius*, 164 Tenn., 259, and, in disposing of the proposition, after referring to *State* v. *Davis, supra; Maxey* v. *Powers*, 117 Tenn., 381; *State* v. *Leonard*, 86 Tenn., 485, and *State* v. *Maloney, supra,* the court said:

"These cases establish the constitutional principle that if a statute creates an office and fixes the term contrary to the express provisions of the constitution, the provisions of the statute creating the office may be enforced, with the constitutional term substituted for the invalid statutory term.

"Applying this principle to the statute under consideration, it seems obviously our duty to give effect to the provisions prescribing the mode of election, and to substitute for the statutory direction as to the time of the

beginning and ending of the term the constitutional direction with respect thereto. In so doing we merely follow the rule stated in *Maxey* v. *Powers, supra,* that the applicable provisions of the constitution are to be considered as written into and made a part of the statute under consideration, giving effect to the terms of the constitution when inconsistent with the terms of the statute.''

The applicable constitutional provision required to be written into and made a part of the statute, as above indicated, was in force when the defendant was elected to the unexpired term of office of tax assessor. This mandate of the Constitution was the superior law. It took precedence over chapter 602, Acts of 1907, upon which the defendant relies, and the Constitution having fixed the time it cannot be held that there was any shortening of the term by subsequent statute made in conformity with the constitutional requirement.

By force of the constitutional provision that reads itself into the statute, the term of office began September 1 after the election of defendant's predecessor and ended on September 1 after the election by the people of defendant's successor in office.

We find no error in the decree of the chancellor.

Since the writ of injunction granted September 2, 1932, restrained the county judge of Knox County from issuing a warrant to the defendant for his salary as tax assessor, and continued in force until final disposition of the cause, it becomes unnecessary to dispose of assignments of error to the action of the chancellor in directing a reference to ascertain damages to relator arising out of defendant's refusal to surrender the office. The damages at most could only be nominal.

The cause will be remanded to the chancery court of Knox County for enforcement of the chancellor's decree awarding the peremptory writ of mandamus and for all such orders as are necessary to its enforcement. The appellant will pay the costs of appeal.