Tennessee Title Co. *v.* First Federal Savings & Loan Ass'n of Nashville, Tenn.

(*Nashville*, December Term, 1946.)

Opinion filed June 26, 1947.

DUNN & DAVIS, of Nashville, for appellant, Tennessee Title Company.

JAY G. STEPHENSON and J. G. LACKEY, JR., both of Nashville, for appellee, First Federal Savings & Loan Ass'n of Nashville, Tenn.

MR. CHIEF JUSTICE CHAMBLISS, delivered the opinion of the Court.

The bill in this cause seeks a declaratory judgment as to the constitutionality and proper construction of Chapter 26, Acts of 1945, captioned "An Act to remove the disability of minority for certain purposes of all minors who have served with the Armed Forces of the United States and in certain instances that of their wives."

The chancellor sustained the Act and construed the intent of the Legislature to be to remove the disabilities of minority of the husbands of female veterans as well as the minority of the wives of male veterans, without discrimination. The Title Company appealed. This Act reads as follows:

"Be it enacted by the General Assembly of the State of Tennessee, that the disability of minority be, and the same is hereby removed from all minors who serve with the Armed Forces of the United States so far as the same be necessary to enable such minors to enter into any and all contracts contemplated and authorized by any legislation, State or Federal granting rights, benefits or privileges to honorably discharged veterans and this removal of such disability shall likewise extend and apply

to all contracts necessarily implied and arising out of their acceptance of such benefits, rights or privileges but not further or otherwise.

"Likewise under the laws of this State, the joinder of the wife of any such minor in the execution of any instrument be necessary to its enforceability against her and she be likewise a minor, her disability shall also be removed to the extent necessary to allow the valid and enforceable execution of such instrument by her, but not further or otherwise."

Complainant is a federal corporation engaged in making loans on homes purchased by veterans under World War II Servicemen's Readjustment Act of 1944, 38 U. S. C. A. Sec. 693 *et seq.*, known as G. I. loans, which Act confers valuable preferential benefits on "Any person who shall have served in the active military or naval service of the United States at any time on or after September 16, 1940, and prior to the termination of the present war and who shall have been discharged or released therefrom under conditions other than dishonorable after active service of ninety days or more, or by reason of an injury or disability incurred in service in line of duty, shall be eligible for the benefits of this subchapter." Title 38 U. S. C. A. Sec. 694.

The Tennessee Act here under consideration, *supra*, as appears therefrom, was passed to remove minority disabilities from those veterans otherwise qualified and empowered to contract for the purchase of homes under the Act of Congress above quoted from and rendered binding their execution of all necessary instruments in connection therewith.

The defendant Title Company is a Tennessee corporation engaged, as authorized by its charter, in issuing

for a consideration mortgage title policies guaranteeing titles to the real estate on which such homes for veterans are erected and is thus vitally interested in the question here presented of the legality and applicability of this Tennessee Act purporting to empower minor veterans to execute the instruments incident to these purchases.

The demurrer below and assignments in this Court challenge (1) the constitutionality of Chapter 26, Acts of 1945, *supra*, and (2) the holding of the chancellor, in construction of the Act, that it applies to all minor veterans, both male and female, without discrimination as to sex, and particularly to either a wife or a husband, coming within the provisions of the Act of Congress above cited, which makes no such discrimination.

■ Considering first the attacks on the constitutionality of the Act, we understand appellants to question the classification for benefits (1) of veterans generally and (2) of minor veterans. Of course, not all classification is prohibited, and we find this Act to be well within the broad powers of the Legislature to decide between that which is prohibited as arbitrary, unreasonable and discriminatory and that which is permitted as natural and reasonable.

Why should not those who have served their country in the day of danger be recognized as belonging to a class entitled to be preferred in legislation? For years the Congress and the Legislatures of the several States have pursued the policy of rewarding veterans of succeeding wars by conferring various types of benefits. Tennessee is among these, as illustrated by Acts exempting veterans from the payment of certain special taxes, from complying with certain regulations regarding the obtaining of teachers' certificates and with respect to

other matters. See Williams' Code, Secs. 1248.8, 1253 and 2365.

Both the Federal Government and this State pay pensions to veterans. The Servicemen's Readjustment Act of 1944, as amended, above referred to, is an illustration of this character of legislation. Such legislation has been generally recognized as within the legislative powers. See 12 Am. Jur. 183, Sec. 501, and 12 C. J., Sec. 856, page 1131, 16 C. J. S., Constitutional Law, Sec. 490, and cases cited. We think this is no longer an open question and it calls for no extended discussion.

And we see no sound reason why the Legislature may not modify or remove the disabilities of veteran minors in order that they may enjoy the bene'fits conferred by such legislation as we have under review, along with those who have reached maturity. We have been cited to but one case in which this precise question has been passed upon. In *Valley National Bank* v. *Glover*, 62 Ariz. 538, 159 P. (2d) 292, 301, the Supreme Court of Arizona held legislation similar to that embodied in our Tennessee Act to be based upon a natural and reasonable classification and valid. We concur with the following holdings of that Court:

"The rule is settled beyond a doubt that majority or minority is a status rather than a fixed or vested right, and that the legislature has full power to fix and change the age of majority. *In re Morrissey*, 137 U. S. 157, 11 S. Ct. 57, 34 L. Ed. 644; *Springstun* v. *Springstun*, 131 Wash. 109, 229 P. 14, 40 A. L. R. 595; 27 Am. Jur. 748, Sec. 5. It is our view that the legislature had the right to classify minor veterans and their spouses to the exclusion of other minors, and the grant of right to make

contracts, as we have heretofore construed the statute, is in all respects constitutional.''

With regard to the right generally of the Legislature to endow minors with the right to make contracts otherwise lawful, the holding of this Court in *Scott* v. *Nashville Bridge Co.,* 143 Tenn. 86, 223 S. W. 844, 853, in which the constitutionality of our Workmen's Compensation Act was upheld, this particular question was directly dealt with. It was said:

"However, we think there is no question as to the power of the Legislature to endow minors with the right to make contracts otherwise lawful, and after he has been so endowed he becomes, for the purpose of the act, an adult, or at least, on the same plane. It was expressly so ruled in the case of *Borgnis* v. *Falk Co.,* 147 Wis. 327, 133 N. W. 209, 37 L. R. A., N. S. 489.''

And in our later case of *Campbell* v. *Bon Air Coal & Iron Corp.,* 151 Tenn. 132, 268 S. W. 377, the opinion in *Scott* v. *Nashville Bridge Co.,* supra, was quoted from at length and expressly approved.

Passing now to the challenge presented of the construction given this Act by the chancellor, by which literal language in the Act removing minority disqualifications for named purposes would appear to limit its application to the minor *wives* of veterans, we are of opinion that the learned chancellor has followed the rule of reason. As well said on the brief of counsel:

''There is no justifiable reason for removing the disabilities of minority of the wives of male veterans and not removing the disabilities of minority of the husbands of female veterans, and there is likewise no jusification for removing the disabilities of minority of the minor spouses of the minor veterans and not removing the disabilities of

minority of minor spouses of adult veterans. Female veterans have just as much need for the joinder of their husbands in the executions of any instrument as a male veteran would need the joinder of his wife; and minor wives of adult veterans would be no less capable in exercising discretion in joining in the execution of an instrument with her husband than a minor wife of a minor veteran. Any such distinction leads to such unjust and absurd consequences that they could not have been intended by the Legislature, and, therefore, creates such an ambiguity as subjects the statute to the scrutiny of the courts for a determination of the legislative intent.''

And it must be conceded, that if the Act is to be thus literally construed, justification would appear for the attack made on its constitutionality as unreasonable class legislation. In this view the familiar rule comes into play which requires that the Court give to an Act, when possible, that construction which saves it. It is not to be assumed that the Legislature intended to pass a void Act.

As written, the Act appears to remove the minority disabilities of minor wives of minor veterans, but not such disabilities of minor wives of adult veterans, or those of minor husbands of female veterans. Obviously, it could not have been the intention of the Legislature to create such an arbitrary and uncalled-for discrimination, confronted with such a situation. The courts may go far in disregarding literal verbage and substituting other language having a meaning consistent with the manifest objectives of the legislation, made plain from the context and the history and necessities out of which the remedial legislation has sprung.

Holding that the Act should be ''liberally construed'' in carrying out the purposes therein expressed, the

chancellor "was of opinion that the word 'wives' in the caption of the Act should be construed as if the word 'spouse' had been used, which would include not only the wives of male veterans, but the husbands of female veterans; and further that the words 'such minor' in the second line of paragraph 2 of the Act were intended by the Legislature to mean 'veterans.' "

It is complained here that the chancellor in making these changes in the plain verbage of the Act has exceeded the authority of the courts in reading into the Act that which is contrary to its express recitals. It is insisted that the courts may not resort to rules of construction where there is no ambiguity in the wording and that none exists here; that the power often exercised by the court to add, delete and change words in statutes may be applied only where the language would bear two constructions, or where the words used are doubtful or ambiguous.

In *State ex rel. Thomason* v. *Temple*, 142 Tenn. 466, 220 S. W. 1084, 1086, certain pertinent elementary rules are stated. The Court said: "A statute is to be construed so as to give effect and meaning to every part of the statute, and words may be modified, altered, or supplied so as to obviate any repugnancy or inconsistency," citing cases. And the Court quotes, with approval, from 36 Cyc. 1116 and 1128, the rule that if "a literal construction will make the act absurd, or will lead to injustice, the court may properly resort to construction." And again, "In construing a statute, the legislative intent is to be determined from a general view of the whole act, with reference to the subject matter to which it applies and the particular topic under which the language in question is found."

And particularly in point, in that case, in construing an inheritance tax, the Court found that "husband" had been unintentionally omitted, that there was no ground or reason to include wives and omit husbands and, said the Court, "the husband is entitled to the same exemption as the wife. . . . This was manifestly the intention of the Legislature," although, said the opinion, "the act does not so state in express terms." And again, "We see no basis, either in law, reason or justice, for classifying the wife as a 'direct' and the 'husband' as a collateral; for making the wife pay 1 per cent, and the husband 5 per cent." The holding of the Court was that in two of the subsections the word "husband" should be added. It will be observed that in that case, as in this, the Court was dealing with a discrimination based on sex.

In the leading case of *Maxey* v. *Powers,* 117 Tenn. 381, 101 S. W. 181, 187, these general observations are made:

"Statutes must be construed, if possible, so as to make them sensible, and to effect and carry out the purposes for which they are enacted. It is not to be presumed that the lawmakers will pass a defective or insensible act, or one in conflict with the organic law. *Wise & Co.* v. *Morgan,* 101 Tenn. (273), 282, 48 S. W. 971, 44 L. R. A. 548; *Rose* v. *Wortham,* 95 Tenn. (505), 508, 32 S. W. 458, 30 L. R. A. 609. The legislative intent will prevail over the strict letter or literal sense of the language used, and, in order to carry into effect this intent, general terms will be limited, and those that are narrow expanded. *Rose* v. *Wortham,* 95 Tenn. 505, 32 S. W. 458, 30 L. R. A. 609; *Lewis* v. *Mynatt,* 105 Tenn. (508), 512-514, 58 S. W. 857."

The following from the text of 50 Am. Jur. 232, Sec. 240, is in point:

"It often happens that the true intention of the law-making body, though obvious, is not expressed by the language employed in a statute when that language is given its literal meaning. In such case, the carrying out of the legislative intention, which is the prime and sole object of all rules of construction, can only be accomplished by departure from the literal interpretation of the language employed. Hence, it is a general rule that the manifest intention of the legislature will prevail over the literal import of the words. Indeed, it is a familiar canon of construction that a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers."

In *Silver, Admr., etc.,* v. *Ladd et al.,* 7 Wall. 219, 19 L. Ed. 138, in which an Act of Congress, known as the Donation Law, 9 Stat. 496, was construed with respect to the designation of the beneficiaries of the legislation, the Court held a widow entitled to be included, despite the fact that the language of that section prescribing the quantity of land to be awarded to each settler read:

". . . one half section, or three hundred and twenty acres of land, if a single man, and if a married man, . . . the quantity of one section, or six hundred and forty acres." 9 Stat. 497, Sec. 4.

In justifying its construction, the Court, speaking through MR. JUSTICE MILLER, said:

"We admit the philological criticism that the words 'single man' and 'married man,' referring to the conjugal relation of the sexes, do not ordinarily include females. And no doubt it is on this critical use of the words that the decision of the Oregon court is mainly founded. But,

conceding to it all the force it may justly claim, we are of the opinion that it does not give the true meaning of the Act, according to the intent of its framers, for the following reasons:''

The opinion proceeds with an analysis of the Act, as a whole, with emphasis on its broad and beneficient objectives and the consequent requirement of its liberal construction to give effect to what was the manifest intention of the lawmakers.

From the learned brief of counsel, published in connection with the report of the opinion of *Silver, Adm'r* v. *Ladd et al.,* supra, we quote the following:

''The words 'he' and 'man' are used frequently in Acts of Congress, to denote both males and females, especially in many prohibitory and penal sections.'' And again, ''The naturalization laws, enacted by the same power, and being like this a general grant or voluntarily concession of favors, used the words 'he,' 'him' or 'man' constantly, to denote and include both men and women; and by the literal reading of section 7, the woman must prove that 'he has behaved as a man of good moral character.' No one has supposed that this phraseology applied to males exclusively. Under that law a woman may be naturalized. *Mick* v. *Mick,* 10 Wend., N. Y., 379.''

The decree of the chancellor is affirmed.

All concur.