HAYNES *et al v.* UNITED CHEMICAL WORKERS,
*CIO* No. 288 *et al.*

(*Knoxville,* September Term, 1949.)

Opinion filed February 10, 1950.

PORTER C. GREENWOOD, of Knoxville, for complainant (appellant).

OLEN HENDERSON, of Oak Ridge, Sol. for United Chemical Workers CIO No. 288.

POORE, COX, BAKER & McAULEY and J. W. BAKER, all of Knoxville, Sols. for Carbide & Carbon Chemical Corporation.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The bill in this cause sought injunctive relief only. The Chancellor dismissed the bill because there was no

equity on the face thereof. The complainants have seasonably perfected their appeal and all the parties in interest have filed well prepared briefs, and have ably argued the matter before the Court.

The brief of Carbide & Carbon states the substance of the bill fairly, as follows:

"In substance, the allegations of the bill are that the complainants were members of the defendant union and employees of the defendant company; that since December 9, 1946, the union, as bargaining agent for a unit of employees of the company including the complainants, had maintained a collective bargaining agreement with the company which contained among its seniority provisions a clause which granted to veterans of World Wars I and II and hired by the company prior to December 9, 1947, a seniority credit of one-fourth their time of military service subject to a maximum credit of one year; that the complainants had received a notification from the company that a reduction in force was necessary and that they were to be terminated on July 14 and 15, 1949, in accordance with the seniority provisions of the agreement; that but for the inclusion in the agreement of the clause granting seniority credit for military service the complainants would not be terminated but would be retained in the stead of other employees who had less company service than the complainants; that the clause in question 'is an unjust and unfair discrimination contrary to public policy'; and that the complainants had attempted to have the clause eliminated from the agreement but those attempts had been thwarted by the union in 'various and sundry illegal means'."

Based on the above, the complainants sought injunctive relief to require their retention by the defendants

on their jobs, on the theory that the clause granting seniority credit for military service was void and should be stricken from the collective bargaining agreement.

The portion of the collective bargaining agreement, between the company and the union, which the complainants seek to have held void, as contrary to public policy, is as follows: ''Section 11. Honorably discharged veterans of World Wars I and II, without previous Company Service, and employed by the Company prior to December 9, 1947, will receive seniority credit in cases of layoff and recall equal to twenty-five (25) per cent of the time spent in the armed services during World Wars I and II, such credit not to exceed one (1) year. For the purpose of administering this section, the duration of World War I is understood to be from April 7, 1917, through July 2, 1921, and the start of World War II is understood to be May 1, 1940.''

Section 11, above, is one of the twelve sections under Article 9 of the agreement between the Carbide & Carbon Chemical Corporation and United Chemical Workers CIO No. 288. The agreement containing the above quoted section is attached to the brief of the appellants. Upon consideration of those sections of this agreement, which provides for a reduction in force, it is seen that, with certain exceptions, reduction in force is to be accomplished by job classification in accordance with seniority or time of Company Service, of employees within the job classification. Seniority is not to govern, however, where: (1) An employee by reason of special training and skill cannot be replaced satisfactorily by an employee having greater seniority, (2) an employee by reason of physical handicap merits special consideration, or (3) an employee is a district steward, division committee-

man or an officer of the union, in which case he is said to have a "super" seniority which entitles him to remain on the job even though employees with greater company service are to be laid off.

Section 11 above provides, in effect, that veterans who enter the service of the company prior to a certain date will receive seniority credit to a limited extent for the time spent by them in the defense of our country. Veterans are thus given a measure of job security by reason of their military service so as to provide for them a fraction of the job security they would have had, if instead of serving with the armed forces, they had been in the employ of the company. It is noted that veterans who prior to their entry into military service were in the employ of the company are excepted from the quoted Section. Obviously the reason is that Congress in enacting the Selective Training and Service Act of 1940, 50 U. S. C. A. Appendix, Section 301 et seq., provided that veterans who left civilian employment to enter their country's service should on their return to such employment receive seniority credit for the time of their military service. The rights provided in this Act are guaranteed to such veterans returning to the employ of the company by Section 12, Article IX, of the collective bargaining agreement in the instant case.

The appellants argue that Section II, above, is void and against public policy because: (1) the section deprives nonveterans of seniority rights which they had before the agreement became effective; (2) the section violates the rights of veterans who were employed by the company before they entered military service; and (3) the section discriminates against veterans who were employed by the company after December 9, 1947.

 The argument in support of the first proposition is that before December 9, 1946, the effective date of the agreement, the appellants were in the employ of the company and had rights of seniority which were tantamount to property rights. This argument must fail because there is no factual foundation laid in the bill to support the argument. No amendment to the bill was asked; the only basis for this argument is laid in the brief and oral argument before this Court. "Seniority is not an inherent, natural, or constitutional right, and does not arise from mere employment, independently of contract, but exists by virtue of the contract between the employer and the union, inuring through the latter to the benefit of the members." 142 A. L. R. 1059. Many cases are cited in the annotation supporting the statement. We think the statement sound and particularly applicable to the factual situation as laid in the bill or complaint before us.

 We can find no factual allegations laid in this bill which provides a basis for the second argument of the appellants above referred to. Under the Selective Training and Service Act of 1940, supra, veterans on their return to employment enjoyed by them before entering military service are to be given seniority rights only to the extent that they would have had such rights if, instead of being in the military service, they had been on the job, and they are just as subject to the seniority rules, including limitations on seniority based on time of company service, which prevail in their employment as any other employee. *Aeronautical Indus. Dist. Lodge 727 v. Campbell,* et al., 337 U. S. 521, 69 S. Ct. 1287. Under the allegations of the bill before us seniority rights

did not exist until such time as they were provided in the collective bargaining agreement between these parties.

The third argument advanced by the appellants is likewise not applicable here. The obvious reason of why benefits of Section 11 were not to be extended to veterans employed after December 9, 1947 was because the parties anticipated that by that time a peace-time economy would have been established and veterans seeking employment would have found it.

 This Court in *Wallace* v. *McPherson,* 138 Tenn. 458, 197 S. W. 565, 566, L. R. A. 1918A, 1148, stated very clearly the meaning of ''public policy'' when it said: ''Any person *sui juris* may make any contract with another which is not in violation of the federal or state Constitutions, federal or state statutes, some ordinance of a city or town, or some rule of the common law. There is no provision or rule of either that forbids such a contract or condition, unless the condition fall within that department of the common law which relates to contracts against public policy. Subtracting from the latter term all that concerns obligations contrary to the Constitutions, statutes, and municipal ordinances, and all known rules of the common law other than those applicable to public policy in its more general aspects, there remains only such matters as are contrary to the public morals, the public health, the public safety, or that can be reasonably held from any point of view as inimical to the public welfare.''

Under this very clear definition of what constitutes ''public policy'' can we say that the inclusion of Section 11 above quoted, is against ''public policy''?

 It seems to us that the provisions of this Section, instead of being against ''public policy'', are in ac-

cord with the accepted policy of the State and Nation. It has been the policy of both the State government and the Federal government to give veterans preferences and other benefits not afforded to other citizens because of their military service. Language pointing clearly to this statement is found in the case of *Tennessee Title Co.* v. *First Federal Savings and Loan Association,* 185 Tenn. 145, 203 S. W. (2d) 697, 698, wherein the Court said:

"(1) Considering first the attacks on the constitutionality of the Act, we understand appellants to question the classification for benefits (1) of veterans generally and (2) of minor veterans. Of course, not all classification is prohibited, and we find this Act to be well within the broad powers of the Legislature to decide between that which is prohibited as arbitrary, unreasonable and discriminatory and that which is permitted as natural and reasonable.

"Why should not those who have served their country in the day of danger be recognized as belonging to a class entitled to be preferred in legislation? For years the Congress and the Legislatures of the several States have pursued the policy of rewarding veterans of succeeding wars by conferring various types of benefits. Tennessee is among these, as illustrated by Acts exempting veterans from the payment of certain special taxes, from complying with certain regulations regarding the obtaining of teachers' certificates and with respect to other matters. See Williams Code, Secs. 1248.8, 1253 and 2365.

"Both the Federal Government and this State pay pensions to veterans. The Servicemen's Readjustment Act of 1944, as amended, above referred to, is an illustra-

tion of this character of legislation. Such legislation has been generally recognized as within the legislative powers. See 12 Am. Jur. 183, Sec. 501, and 12 C. J., Section 856, page 1131, 16 C. J. S., Constitutional Law, Section 490, and cases cited. We think this is no longer an open question and it calls for no extended discussion.''

The Collective Bargaining Agreement (insofar as we are informed) was entered into in good faith after mature deliberation by all parties concerned. The appellants herein were members of the Union negotiating the contract. These individual members and others may not have approved of the contract and its terms but unquestionably the majority of the members of the Union did approve of the contract and it is the contract between the Union and the employer.

It is argued on behalf of the appellants that the provision of the contract in question above quoted comes within the holding of the Supreme Court of the United States in the case of *Steele* v. *Louisville & N. R. Co. et al.*, 323 U. S. 192, 65 S. Ct. 226, 89 L. Ed. 173, 185. In the Steele case an entire racial group, who could not be members of the Union, the exclusive bargaining agent, were systematically discriminated against. That clearly is not the situation in the case before us. The provision of the contract complained of herein, instead of being an exclusion of a specified group as was in the Steele case, is, in effect, a provision in accord with the feeling of most of the people in the Country. To strike this provision down and say that it is void and against public policy, to include in a contract slight preference in favor of veterans, would be slapping the feeling of the people of the State and Nation in the face.

174

■ The appellants argue that they made efforts to exclude Section 11 from this Collective Bargaining Agreement but were "defeated by various and sundry illegal means in violation of the Constitution and By-laws of the defendant Union." It is not shown or alleged in any way that the appellants have exhausted their remedies through the various and sundry Union facilities to correct, if it be wrong, this portion of the contract. In the absence of such a showing it is the general holding of the courts of this Country that a member of a labor Union is not entitled to judicial relief from the decisions of a local officer or tribunal of the Union, which settles controversies adverse to him, until he has exhausted remedial procedures within the Union. 142 A. L. R., 1069 and cases there cited.

The situation presented by the argument under this feature of the case is rather well summed up in an Ohio case as follows:

"As the general rule, courts will not interfere with the internal affairs of an organization such as the union was, nor attempt to make new contracts for the parties, particularly where the parties are a labor union on the one hand and an employer on the other. Courts have protected the right of union members in enforcing an agreement made for their benefit, but courts have never gone so far as to order a new contract made at the request of a few dissatified members of the union.

"The collective bargaining system and process would collapse eventually if in cases such as review plaintiffs, dissatisfied minority members of a bargaining unit, could successfully invoke the jurisdiction of a court of equity to enjoin action by the majority members thereof, acting in accordance with the terms of an existing collective

bargaining agreement, and compel the execution of a new contract, and thereby thwart the expressed will of the majority of the members of the union.

"The rule of the majority is deeply rooted in our system of government, and is applicable to labor relations both within unions and in their dealings with employers as it is in all other relationships of life where it is applicable; and the Supreme Court of the United States has held collective bargaining agreements, such as that under consideration in the case we review, do not establish, but merely govern, the terms of the relationship existing between the union and the corporation." *Jennings, et al.* v. *Jennings,* Ohio, 16 Labor Cases, 266.

We have given this matter much thought and are convinced that the Chancellor was correct in entering the decree which he did. The appeal is therefore dismissed and the decree below affirmed with costs against the appellants.

All concur.