**Aola JOHNSON**

v.

**UNION CARBIDE NUCLEAR COMPANY and Atomic Trades and Labor Council, AFL-CIO.**

Civ. A. No. 4316.

United States District Court
E. D. Tennessee, N. D.

May 8, 1962.

John J. Johnson, Jr., Knoxville, Tenn., Carl A. Cowan, Knoxville, Tenn., for plaintiff.

E. H. Rayson, Knoxville, Tenn., Eugene Joyce, Oak Ridge, Tenn., W. L. Ambrose, Jr., Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

Plaintiff claims that her employer, Union Carbide Nuclear Company, hereafter for convenience called Company, and the bargaining agent for the Union to which she belonged, Atomic Trades and Labor Council, hereafter for convenience called Union, violated her seniority rights when the Company continued in its employment an employee of less seniority and laid her off on January 6, 1960.

She seeks a declaratory judgment of her rights and an award of compensatory and punitive damages against the Com-

pany and the Union, or in the alternative, a mandatory injunction to reinstate her with full seniority and back pay.

Plaintiff was first employed November 4, 1943. She became a member of the Union on September 16, 1949 and continued in good standing until the date she was laid off. Her Union was certified under the National Labor Relations Act.

The contract between the Union and the Company provided, among other things, for recognition of the Union as exclusive bargaining agent for the employees, grievance procedures, arbitration procedures and seniority rights.

Plaintiff was classified as a bottle-washer and there were two other women in her group and they were known as the skilled laborer group or the Building Services Seniority Group. Plaintiff was senior to the other two women in this group, the other two women having been employed in 1944. They were engaged in the same type of work, as bottle washers and janitorial work. On September 19, 1949, they were transferred from the Building Service Seniority Group to the Laborer Seniority Group, but continued to be engaged in the same work. Immediately following September 19, 1949, the Company posted a list of the three employees in this group and listed them as follows:

Stowers, Cora Lee : 9/19/49   Badge 2456
Henry, Lillian G.   9/19/49   Badge 2196
Johnson, Aola   9/19/49   Badge 1532

When plaintiff noticed this listing of the three employees in reverse order of employment, she called this to the attention of her supervisor, C. W. Thurston, who was also an employee of the Company and a member of the Union, and who in 1954 notified her job steward, George McMillan, now deceased, and demanded that the list be corrected in accordance with the Collective Bargaining contract filed as Exhibit "A" to the complaint. McMillan later reported to plaintiff that the necessary correction had been made concerning the names on the list according to seniority and that plaintiff should have no further worries. As far as plaintiff was able to determine from the advice from her steward, the matter was closed as the steward was her superior and in control of all grievances. Plaintiff at no time, after this occurrence, noted nor was she advised that the listing of the names in the correct order as to seniority was not accomplished.

On receipt of her letters of dismissal dated October 9 and December 24, 1959, she notified her then steward, Raymond T. Woods, who alerted the Union about the letters of dismissal.

The Grievance Procedure set forth in Article III of the contract was followed through step 4. Article III, step 4, provides in part that, "If no agreement is reached and the matter is subject to arbitration, it may be referred to arbitration in accordance with Article IV." The arbitration step was not followed.

On October 27, 1959, William I. Tillery, Vice President of the Union, wrote the Company that, "It is the position of the union that the above named employees (referring to plaintiff and her co-workers) be transferred from the Laborers Seniority Group to the Building Services Seniority Group. Their seniority in the Building Services Group should start with their original hire-in date at the laboratory. The union has no intentions to becoming party to the type of treatment the company is trying to accord these long-service employees." The Company refused to change plaintiff and her two co-workers back to their original Building Services Group so that they could retain their seniority. Plaintiff claims that her dismissal was in derogation of her rights under the Collective Bargaining Agreement.

The complaint charges that the Union pursued plaintiff's remedies under the Grievance Procedures, but refused to process her grievances to arbitration in accordance with the Collective Bargaining contract.

The complaint further charges that the Union and the Company owed plaintiff a duty to pursue the remedies provided by the Arbitration Procedure of

the contract, but refused to perform that duty. That by reason of such failure, both the Company and the Union are liable to plaintiff, for which she seeks injunctive relief and compensatory and punitive damages.

■ The terms of the contract between the Company and the Union became a part of plaintiff's individual contract of employment. Her rights and those of the Company and the Union are controlled by this contract. Association of Westinghouse Salaried Emp. v. Westinghouse Electric Corp., 210 F.2d 623 (C.A.3, 1954).

The pertinent part of Article V, Section 2, of the contract provides:

"Seniority of employees shall be determined from the date of entrance into a seniority group and shall accumulate in that group, except as provided below."

Section 6 of this Article provides:

"When employees are transferred permanently from one seniority group to another, they shall retain their seniority in the seniority group from which they came for a period of twelve (12) weeks. After twelve (12) weeks their original group seniority shall be abolished and the employee's seniority shall date from his transfer to the new seniority group."

As heretofore pointed out, on September 19, 1949, plaintiff and her two co-workers were transferred from the Building Services Group to the Laborers Seniority Group and after the lapse of twelve weeks plaintiff's seniority dated from the date of her transfer to the new seniority group. Plaintiff and her two co-employees have identical seniority dates. In listing the names of them, attention was not given to the hiring dates, or any other factor and they were listed in the order heretofore shown, plaintiff being the last one on the list.

The pertinent part of Section 1, Article V, provides:

"The seniority of each employee is his relative position with respect to other employees in accordance with the seniority groups in Appendix A attached hereto and made a part hereof."

The seniority lists were issued periodically and made available to the Union. Plaintiff was the lowest on the seniority list in her group and this was the reason for her lay off.

The Company has filed a motion to dismiss pursuant to Rule 12(b) (1) and (6) of the F.R.Civ.P., 28 U.S.C.A. based on several grounds, one of which is that neither plaintiff nor her bargaining agent exhausted the administrative remedies provided for in the Collective Bargaining Agreement.

■ It is the opinion of this Court that plaintiff is not entitled to relief against the Company and that the Company's motion to dismiss should be granted. She has failed to comply with the grievance and arbitration procedures provided for in the contract. Haynes et al. v. United Chemical Workers, etc., 190 Tenn. 165, 174, 228 S.W.2d 101; Arnold v. Louisville & N. R. R. Co., D. C., 180 F.Supp. 429, 435; and Jenkins v. Atlas Powder Company, the last case being unpublished in the Tennessee Reports, but published in 27 Labor Arbitration Reports 778. This case was decided by the Supreme Court of Tennessee on December 27, 1956 and a verifax copy of the opinion has been furnished to this Court by counsel.

In that case, the Court said in part:

"The bill did not allege a compliance with this procedure. The Chancellor sustained the demurrer. This action was required under the holding in Haynes v. United Chemical Workers, 190 Tenn. 165, 174 [228 S.W.2d 101], 25 LRRM 2456, as follows:

" 'It is not shown or alleged in any way that the appellants have exhausted their remedies through the various and sundry Union facilities to correct if it be wrong this portion of the contract. In the absence of such a showing it is the general

holding of the courts of this Country that a member of a labor Union is not entitled to judicial relief from the decisions of a local officer or tribunal of the Union, which settles controversies adverse to him, until he has exhausted remedial procedures within the Union. * * *'"

 The Union has filed a motion to dismiss upon the grounds that (a) the matters complained of do not come within the jurisdiction of the Court, (b) declaratory judgment is not the proper remedy, (c) the cause of action is barred by the six and ten year statutes of limitations and (d) that plaintiff's long delay and laches bar her right of action.

In view of the broad allegations in the complaint regarding the Union, it is the opinion of the Court that its motion should be denied, without prejudice to renew at pretrial or during trial on the merits.

Present order.