IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 19, 2016 Session

## AARENE CONTRACTING, LLC v. KRISPY KREME DOUGHNUT CORPORATION

**Appeal from the Chancery Court for Hamilton County**
**No. 15-0436          Pamela A Fleenor, Chancellor**
———————————————————

**No. E2016-01155-COA-R3-CV-FILED-DECEMBER 20, 2016**
———————————————————

A contractor sued an owner for violations of the Prompt Pay Act, Tenn. Code Ann. §§ 66-34-101 *et seq.*, and notified the owner of its violations by Federal Express and e-mail. The owner moved for summary judgment on the ground that the contractor failed to strictly comply with the notice provision requiring notice be sent by registered or certified mail, return receipt requested. The trial court found strict compliance was required and dismissed the contractor's claims under the Act. The contractor appealed, and we reverse the trial court's judgment, holding substantial compliance is sufficient under the facts of this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

David K. Taylor and Bridget Brodbeck Parkes, Nashville, Tennessee, for the appellant, Aarene Contracting, LLC.

Christopher D. Owens, Johnson City, Tennessee, for the appellee, Krispy Kreme Doughnut Corporation.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is a construction case in which Aarene Contracting, LLC ("ACL")

agreed to renovate a store for Krispy Kreme Doughnut Corporation ("KKD") in Chattanooga, and KKD agreed to pay ACL $524,027 for the work. The contract was executed in November 2013 and provided for progress payments. Paragraph 3.4 of the contract provided that KKD would pay ACL 90% of the amount owing for the work "completed and accepted by [KKD]," and the remaining 10% was to be withheld as "retainage." ACL submitted two applications for payment, less retainage, in February and March 2018, which KKD approved and paid. The total retainage withheld by KKD was $49,283.16.

On or about September 30, 2014, counsel for ACL sent a letter by way of Federal Express and e-mail to counsel for KKD regarding disagreements that had arisen between the parties up to that point, including claims ACL had against KKD under the Tennessee Prompt Pay Act of 1991, Tenn. Code Ann. §§ 66-34-101 *et seq*. ("Prompt Pay Act" or "the Act"). ACL's letter informed KKD of the following, *inter alia*:

> As you are aware, the Tennessee Prompt Pay Act of 1991 applies to all private contracts for construction performed in Tennessee. Additionally, the law applies to contracts where the base contract price exceeds $500,000, and it prohibited Krispy Kreme from withholding more than 5% in retainage. Tenn. Code Ann. § 66-34-103(a). Krispy Kreme was also required to create a separate escrow account with a third party for retained amounts. Tenn. Code Ann. § 66-34-104(a). At no time during the performance of this contract did Krispy Kreme comply with Tennessee law. The General Contract was in the original principal amount of $524,027.00, and Krispy Kreme has unlawfully withheld amounts in excess of 5%. Additionally, it does not appear that Krispy Kreme utilized a third party escrow account as necessary. Further, under Tennessee law, Krispy Kreme was required to pay the retained amounts within ninety (90) days after substantial completion of the work. In our case, the work was substantially completed in May 2014 as Krispy Kreme has had full use of the improvements since that time. Therefore, the retainage is long past due.

> The statute also provides that there is a $400.00 penalty per day for each and every day that the retained funds are not deposited into a third-party escrow account. As the first payment [was] received by my client for which funds were retained on March 31, 2014, . . . this penalty accrues from March 31, 2014. Through the date of this letter Krispy Kreme currently owes the sum of $73,200.00 in additional penalties, plus interest.

> As you know, Krispy Kreme has had use of the premises since the work was completed in May 2014. It has now been over one hundred twenty

(120) days since the work was substantially completed. Unless the sum of $262,024.63 is paid immediately and no later than ten (10) days of the date hereof, then Aarene shall proceed with all of its legal and equitable remedies, and will also seek to recover interest on all sums due, and its attorney's fees and all court costs and litigation expenses.

KKD responded to ACL by letter dated October 8, 2014, and addressed each of the issues ACL raised in its letter. With respect to ACL's claim under the Prompt Pay Act, KKD disagreed with ACL's interpretation and application of the statute. Then, by letter dated October 13, 2014, ACL replied to KKD's response. With regard to its complaint under the Prompt Pay Act, ACL wrote: "Keep in mind that the retainage penalty is accumulating every single day of the Owner's violation of Tennessee law."

## II. TRIAL COURT PROCEEDINGS

On August 4, 2015, ACL filed a sworn complaint against KKD in Hamilton County Chancery Court. In addition to breach of contract and mechanic's lien claims, ACL asserted claims under the Prompt Pay Act: it claimed KKD had violated the retainage laws by (1) withholding 10% as retainage rather than the 5% permitted under Tennessee law and (2) failing to create or fund an interest-bearing escrow account to hold the retainage as required by the Act. KKD answered the complaint, and in response to the retainage claims, KKD asserted that ACL had failed to comply with the statutory notice requirements because ACL did not notify KKD of its Prompt Pay Act claims by registered or certified mail, return receipt requested.

KKD filed a motion for summary judgment in August 2015 in which it argued ACL's claims under the Act were barred and should be dismissed because ACL failed to comply with the notice requirements of the statute. ACL responded to KKD's motion and filed its own motion for summary judgment in October 2015. The trial court heard oral argument and issued an order in January 2016 granting KKD's motion and denying ACL's motion. The trial court wrote:

> The Court finds that the Plaintiff has not given notice of its intent to seek relief under the Prompt Pay Act by registered or certified mail return receipt requested, but instead gave notice to the Defendant by Federal Express and by e-mail.
>
> . . . .
>
> As to the legal analysis, Plaintiff filed this action, *inter alia*, for a violation of the Prompt Pay Act. Defendant argues that Plaintiff failed to comply with the notice provisions of the statute, and as such, is precluded from seeking remedies under the Act.

The Court finds that Tennessee Code Annotated § 66-34-602(a)(1) provides that a contractor who has not received payment from an owner or a subcontractor, materialman, or furnisher who has not received payment from a contractor or other subcontractor, materialman, or furnisher in accordance with this chapter, shall notify the party failing to make payment of the provisions of this chapter and of the notifying party's intent to seek relief provided for within this chapter.

Then, in subsection 2:  The notification shall be made by registered or certified mail return receipt requested.  It is undisputed that Plaintiff failed to send the notification by registered or certified mail return receipt requested.  Instead, Plaintiff notified Defendant by Federal Express and e-mail.

. . . .

. . . This Court is not going to legislate from the bench by expanding this notice statute. This is a statutory remedy in derogation of common law. The Court finds that to seek the remedies under this statute, which are additional remedies to any contract remedies, the party must follow the notice provisions.

ACL filed a motion seeking permission to file an interlocutory appeal pursuant to Tenn. R. Civ. P. 9, which the trial court granted.  Ultimately, however, ACL filed a notice of voluntary nonsuit of its breach of contract and mechanic's lien claims pursuant to Tenn. R. Civ. P. 41.01(3).  Then, following the trial court's order dismissing those claims without prejudice, ACL filed a notice of appeal.  On appeal, ACL argues the trial court erred by granting KKD's motion for summary judgment and for denying its competing motion for summary judgment.

III. ANALYSIS

A party filing a motion for summary judgment should prevail "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04.  If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it "(1) [s]ubmits affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) [d]emonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Tenn. Code Ann. § 20-16-101.  We review the trial court's judgment granting KKD's motion for summary judgment de novo, according it no presumption of correctness. *See*

- 4 -

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).

This case turns on the interpretation and application of the notice provision of the Prompt Pay Act, Tenn. Code Ann. §§ 66-34-101 *et seq.* The construction of a statute is an issue of law, which is reviewed de novo, with no presumption of correctness applied to the trial court's rulings. *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009); *State v. Edmondson*, 231 S.W.3d 925, 927 (Tenn. 2007). "'The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" *State v. Howard*, __ S.W.3d __, 2016 WL 5933430, at *5 (Tenn. Oct. 12, 2016) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). Courts interpret statutes to avoid reaching absurd results. *The Tennessean v. Metro. Gov't of Nashville & Davidson Cnty.*, 485 S.W.3d 857, 872 (Tenn. 2016).

The notice provision is found in Part 6 of the Act, which is titled "Remedies for Delinquent Payment or Nonpayment." Tenn. Code Ann. §§ 66-34-601–602. The section containing the notice provision is called "Remedies for Delinquent Payment or Nonpayment" and provides as follows:

> (a)(1) A contractor who has not received payment from an owner, or a subcontractor, materialman or furnisher who has not received payment from a contractor or other subcontractor, materialman or furnisher, in accordance with this chapter, shall notify the party failing to make payment of the provisions of this chapter and of the notifying party's intent to seek relief provided for within this chapter.
>
> (2) **The notification shall be made by registered or certified mail, return receipt requested.**
>
> (3) If the notified party does not, within ten (10) calendar days after receipt of such notice, make payment or provide to the notifying party a response giving adequate legal reasons for failure of the notified party to make payment, the notifying party may, in addition to all other remedies available at law or in equity, sue for equitable relief, including injunctive relief, for continuing violations of this chapter, in the chancery court of the county in which the real property is located.
>
> (4) The failure to make the only payment due under the contract may be considered to be a continuing violation under this chapter.
>
> (b) Reasonable attorney's fees may be awarded against the nonprevailing party; provided, that such nonprevailing party has acted in bad faith.

(c) A bond in double the amount claimed or ordered to be paid shall be filed with good sureties to be approved by the clerk prior to the issuance of any injunctive relief.

Tenn. Code Ann. § 66-34-602 (emphasis added).

The parties agree that there are no genuine issues of material fact with respect to the issue of notice. There is no dispute that ACL notified KKD of the Act's provisions and of its intent to seek relief under the statute, and that its notification was sent by letter, via Federal Express and e-mail. KKD responded to ACL's notice letter within ten days, and when the parties were unable to reach a satisfactory resolution of ACL's claims, ACL filed its complaint several months later.

ACL makes two arguments on appeal. First, ACL argues the trial court erred by applying the notice provision to its retainage claims because ACL's claims under the Act are not based on a "payment" KKD owes it, as that term is used in Tenn. Code Ann. § 66-34-602(a)(1). Instead, ACL argues, its claims are based on KKD's failure to comply with the retainage laws that are set forth in Part 1 of the Act, titled "General Provisions," that set forth the percentage that can legally be retained and mandate the establishment of an escrow account to hold the retainage.[1] Part 1 also provides the parameters for the escrow account that must be established to hold the retainage.[2] ACL points out that the notice

---

[1]Part I of the Prompt Pay Act includes the following relevant provisions:

> (a) All construction contracts on any project in this state, both public and private, may provide for the withholding of retainage; provided, however, that the retainage amount may not exceed five percent (5%) of the amount of the contract.
> . . . .
> (e)(1) It is an offense for a person, firm or corporation to fail to comply with subsection (a) or (b) or § 66-34-104(a).
> (2)(A) A violation of this subsection (e) is a Class A misdemeanor, subject to a fine only of three thousand dollars ($3,000).
>   (B) Each day a person, firm or corporation fails to comply with subsection (a) or (b) or § 66-34-104(a) is a separate violation of this subsection (e).
>   (C) Until the violation of this subsection (e) is remediated by compliance, the punishment for each violation shall be consecutive to all other such violations.
> (3) In addition to the fine imposed pursuant to subdivisions (e)(2)(A) and (B), the court shall order restitution be made to the owner of the retained funds. In determining the appropriate amount of restitution, the formula stated in § 40-35-304 shall be used.

Tenn. Code Ann. § 66-34-103.

[2]Tennessee Code Annotated section 66-34-104 provides, in pertinent part:

> (a) Whenever, in any contract for the improvement of real property, a certain amount or

provision appears in Part 6 of the Act, which is titled "Remedies for Delinquent Payment or Nonpayment," and contends that it is not seeking payment of the amount KKD retained pursuant to the Act. Rather, ACL explains, it is seeking payment from KKD through its breach of contract claim. Second, ACL contends that if the trial court was correct in applying the notice requirement to its retainage claims, ACL substantially complied with the notice provision and the trial court erred in dismissing its claims under the Act.

We will address ACL's second argument first. ACL asserts that strict compliance should not be required in this case because KKD does not deny receiving its notice letters; KKD responded to the first letter and denied any retainage law violations; and KKD is unable to show it was prejudiced by the method ACL selected to serve it with notice of ACL's claims under the Prompt Pay Act. ACL relies on two Tennessee Supreme Court cases in support of its position, *Arden v. Kozawa*, 466 S.W.3d 758 (Tenn. 2015), and *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512 (Tenn. 2014). Both of these cases arose in the medical malpractice context. In *Arden*, the issue was whether a medical malpractice claim was subject to dismissal because the plaintiff notified the defendants of his claim via Federal Express rather than by certified mail, return receipt requested, as the statute required. *Arden*, 466 S.W.3d at 760. As was the case here, the defendants in *Arden* did not contend they failed to receive notice or that they were prejudiced by the plaintiff's method of service, but they moved for summary judgment on the basis that the plaintiff failed to comply strictly with the

---

percentage of the contract price is retained, that retained amount shall be deposited in a separate, interest-bearing, escrow account with a third party which must be established upon the withholding of any retainage.

(b) As of the time of the withholding of the retained funds, the funds shall become the sole and separate property of the prime contractor or remote contractor to whom they are owed, subject to the rights of the person withholding the retainage in the event the prime contractor or remote contractor otherwise entitled to the funds defaults on or does not complete its contract.

(c) In the event that the party withholding the retained funds fails to deposit the funds into an escrow account as provided herein, such party shall be responsible for paying the owner of the retained funds an additional three hundred dollar ($300) penalty per day for each and every day that such retained funds are not deposited into such escrow account.

(d) The party with the responsibility for depositing the retained amount in a separate, interest-bearing, escrow account with a third party shall have the affirmative duty to provide written notice that it has complied with the requirements of this section to any prime contractor upon withholding the amount of retained funds from each and every application for payment, including:

(1) Identification of the name of the financial institution with whom the escrow account has been established;

(2) Account number; and

(3) Amount of retained funds that are deposited in the escrow account with the third party.

notice requirement as set forth in the statute. *Id.* The trial court in *Arden* granted the defendants summary judgment because it found the statute required strict compliance with the service requirements, and the Court of Appeals affirmed the trial court's judgment. *Id.* at 760-61. The Supreme Court disagreed that strict compliance was required, however, and reversed the Court of Appeals decision. *Id.* at 761.

The statute at issue in *Arden* provided that service "shall be demonstrated by filing a certificate of mailing from the United States postal service" together with an affidavit of the person mailing the notice "establishing that the specified notice was timely mailed by certified mail, return receipt requested." Tenn. Code Ann. § 29-26-121(a)(4); *see Arden*, 466 S.W.3d at 762-63. Despite the language used in the statute, the Supreme Court held that "the manner and proof of service requirements of [the statute] are not mandatory, but directory, and can be achieved through substantial compliance." *Arden*, 466 S.W.3d at 764. The Court explained:

> So long as a health care defendant is not prejudiced by a plaintiff's deviations from the statutorily prescribed method of service—"certified mail, return receipt requested"—or the proof of service requirement— "filing a certificate of mailing from the United States [P]ostal [S]ervice"— substantial compliance with these statutory requirements will suffice. *See Thurmond [v. Mid-Cumberland Infectious Disease Consultants, PLC]*, 433 S.W.3d [512,] 518 [(Tenn. 2014)]; *Stevens [ex. rel. Stevens v. Hickman Comm. Health Care Servs., Inc.]*, 418 S.W.3d [547,] 555 [(Tenn. 2013)]; *see also Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003) (recognizing the state public policy of deciding cases on their merits as opposed to dismissing on procedural technicalities).

*Arden*, 466 S.W.3d at 764. The *Arden* Court continued:

> Further, we hold that delivery of pre-suit notice by private commercial carrier, such as FedEx, and filing of proof with the complaint constitutes substantial compliance with sections 29-26-121(a)(3)(B) and (a)(4) of the pre-suit notice statute. As long as a defendant is not prejudiced, it does not matter whether a commercial carrier or the U.S. Postal Service delivers the notice. The overarching purpose of the pre-suit notice statute is to ensure that health care defendants receive timely notice of a forthcoming lawsuit. While the method of delivery could constitute deficient service of pre-suit notice if a health care defendant claims lack of notice or prejudice, that is not the case before us.

*Id.*

In *Thurmond*, the Supreme Court determined that substantial compliance satisfied

the statutory requirement that an affidavit by the person who sends pre-suit notice by certified mail be attached to the complaint in medical malpractice cases. *Thurmond*, 433 S.W.3d. at 513. In that case, the plaintiff failed to attach the affidavit to the complaint but filed it with the court five days later. *Id.* at 521. After reviewing other medical malpractice cases in which defendants argued strict compliance with notice provisions or particular forms was required, the Court wrote that "unless strict compliance with a notice content requirement 'is essential to avoid prejudicing an opposing litigant,' substantial compliance with a content requirement will suffice." *Id.* at 520 (quoting *Stevens*, 418 S.W.3d at 555). Because the defendants did not allege they suffered any prejudice from the plaintiff's failure to file the affidavit with the complaint, the Court held that substantial compliance with the statutory affidavit requirement was sufficient. *Id.* at 521.

In the workers' compensation context, the Supreme Court has held that strict compliance was not required for a subcontractor to recover workers' compensation benefits under a general contractor's insurance policy when neither the general contractor nor the subcontractor provided notice to the Department of Labor of the subcontractor's election to be so covered, as required by the statute at issue. *Presley v. Bennett*, 860 S.W.2d 857, 860 (Tenn. 1993). Concluding that the notice requirement was directory rather than mandatory, the Court wrote:

> In general, when determining whether a procedural requirement of a statute is directory or mandatory, the object is to ascertain the legislative intent by consideration of the entire statute, including its nature and purpose, and the consequences that would result from a construction one way or the other. Directory provisions require only substantial compliance. Statutory provisions relating to the mode or time of doing an act to which the statute applies are ordinarily held to be directory rather than mandatory.

*Id.* (citations omitted); *see also Thurmond*, 433 S.W.3d at 520 (citing *Presley* with approval).

KKD relies on *Vulcan Materials Company v. Gamble Construction Company, Inc.*, 56 S.W.3d 571 (Tenn. Ct. App. 2001), to support its position that the notice provision in the Prompt Pay Act requires strict compliance. The action in *Vulcan Materials* was to enforce a materialman's lien. *Vulcan Materials Co.*, 56 S.W.3d at 572. The statute at issue required notice of nonpayment for work, services, or materials to be provided to the owner and contractor and provided that the notice "shall be served by registered or certified mail, return receipt requested." *Id.* at 573 (quoting Tenn. Code Ann. § 66-11-145(a)). The plaintiff in *Vulcan Materials* was a manufacturer and seller of materials and delivered its notice of nonpayment to the owner by hand rather than by registered or certified mail, return receipt requested. *Id.* at 572. The defendant moved for summary judgment and sought dismissal of the complaint due to improper service of

the notice, which the trial court granted. *Id.* Relying on a Supreme Court case from 1931, the Court of Appeals affirmed, noting that a materialman's lien is a creature of statute and stating that "'when the lawmaking body prescribes the terms upon which it may be asserted, it is beyond the power of [courts] to waive its provisions or substitute others.'" *Id.* at 573-74 (quoting *McDonnell v. Amo*, 34 S.W.2d 212, 213 (Tenn. 1931)). The Court of Appeals further wrote that "[a]s an intermediate appellate court, it is not our prerogative to set policy or substitute our judgment for that of the legislative branch." *Id.* at 575 (citing *Cavender v. Hewitt*, 239 S.W. 767, 768 (Tenn. 1922)).

The Supreme Court's decision in *Arden* reflects a more practical way of examining such issues. While it is tempting to merely write that the statute says what it says and to blame the legislature for the result, the Supreme Court has implicitly recognized that the courts would be abandoning their constitutional role of interpreting statutes using reason and practicality with the intent of the legislature in mind. "An old and familiar rule in the exposition of statutes is that the reason and intention of the law, when obvious, will prevail over the literal sense of the words." *Sands v. Brock Candy Co.*, 101 S.W.2d 1113, 1117 (Tenn. 1937); *see also Heirs of Ellis v. Estate of Ellis*, 71 S.W.3d 705, 712 (Tenn. 2002) ("the polestar of statutory interpretation has always been the intent of the legislature. As such, where the 'carrying out of the legislative intention, which is the prime and sole object of all rules of construction, can only be accomplished by departure from the literal interpretation of the language employed,' then the legislative intent should be applied over 'the literal import of the words.'") (quoting *Tenn. Title Co. v. First Fed. Sav. & Loan Ass'n*, 203 S.W.2d 697, 700 (Tenn. 1947)); *Polk Cnty. v. State Bd. of Equalization*, 484 S.W.2d 49, 58-59  (Tenn. Ct. App. 1972) ("a reviewing court will look to the legislative purpose of a statute and follow that purpose even though a literal reading of the language would suggest a different conclusion.").

We note that the court in *Vulcan Materials* did not address whether the defendant suffered any prejudice as a result of the method the plaintiff chose to serve its notice. To the extent the Court of Appeals' ruling in *Vulcan Materials* is inconsistent with the Supreme Court's rulings in *Arden* and *Thurmond*, we find the Supreme Court's rulings announce the principles that control the outcome of this case. The intent of Tenn. Code Ann. § 66-34-602(a)(2) is to ensure that the party failing to make payment is notified of the Prompt Pay Act and of the notifying party's intent to seek relief provided for by the Act. A method of notification that accomplishes this intent without prejudice to the party being notified is sufficient. The language of the statute as to the method is merely directory.

We also note KKD's argument that the Prompt Pay Act is a penal statute because it provides for the assessment of penalties if its terms are violated and that penal statutes are to be strictly construed. *See* Tenn. Code Ann. § 66-34-104(c) (providing that if party withholding retained funds fails to deposit funds into escrow account, party shall pay owner of funds $300 penalty per day until funds are so deposited). However, in *Beacon4,*

*LLC v. I & L Investments, LLC*, No. E2015-01298-COA-R3-CV, 2016 WL 4545736 (Tenn. Ct. App. Aug. 30, 2016), the Court of Appeals determined that the Prompt Pay Act has "remedial aims." *Beacon4*, 2016 WL 4545736, at *46. The court noted that remedial statutes include those that provide "'means or method[s] whereby causes of action may be effectuated, wrongs redressed and relief obtained.'" *Id.* (quoting *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998)). The court wrote:

> We determine the [Prompt Pay Act] in general to have remedial aims in that it operates to effectuate the means by which those it was designed to protect may recover their already existing property and contractual rights in funds they have earned. Legitimate business enterprises and consumers as a whole are then protected from the consequences of contractors, subcontractors, materialmen, furnishers, architects, and engineers receiving less than they have bargained for and earned.

*Id.* (footnote omitted).

The Prompt Pay Act was enacted "'to provide for timely payments to contractors, subcontractors, materialmen, furnishers, architects, and engineers and to provide for interest on late payments.'" *Id.* (quoting 1991 TENN. PUB. ACTS CH. 45 (H.B. 875)). As the contractor for the KKD project, ACL is an intended beneficiary of the Act. For the reasons the Supreme Court set forth in *Arden*, *Thurmond*, and *Presley*, we hold that the mode of pre-suit notice set forth in Tenn. Code Ann. § 66-34-602(a)(2) is directory rather than mandatory and requires only substantial compliance. Because ACL provided KKD with the information it was required to provide under the statute before it filed suit, and because KKD was not prejudiced by the method ACL used to provide notice, we conclude ACL substantially complied with the statute and that the trial court erred in granting KKD's motion for summary judgment and dismissing ACL's claims under the Act. In light of our holding that ACL has substantially complied with the Act's notice requirement, we need not address ACL's alternative argument that the notice provision does not apply to its retainage claims under the Prompt Pay Act.

In its motion for summary judgment, ACL sought a ruling that KKD violated the retainage laws; a monetary judgment in the amount of $180,000; a statutory award of $300 for each day that KKD failed to deposit the retainage into an interest bearing escrow account; and its reasonable attorney's fees. On appeal, ACL requests that we grant it the relief it sought in its motion for summary judgment. The trial court did not address ACL's requests for relief once it determined that ACL had not complied with the notice requirements of the Prompt Pay Act, and it is not appropriate for this Court to address these issues before the trial court has an opportunity to do so. Therefore, we remand this case to the trial court with instructions that the trial court address ACL's motion for summary judgment to determine the relief, if any, that ACL should be awarded.

## IV. CONCLUSION

For the reasons stated above, we reverse the trial court's award of summary judgment to KKD and remand the case for further proceedings. Costs of this appeal shall be taxed to the appellee, Krispy Kreme Doughnut Corporation.

_____
ANDY D. BENNETT, JUDGE